Karen A. BALDRIDGE, Respondent/Cross-Appellant,

v.

David B. LACKS, et al., Appellants/Cross-Respondents.

Nos. 64242, 64243.

Missouri Court of Appeals, Eastern District, Division Four.

July 26, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 1994.

Application to Transfer Denied Oct. 25, 1994.

Thomas C. Walsh, David S. Slavkin, Kathryn S. Elliott, Bryan Cave, Eugene K. Buckley, Evans & Dixon, St. Louis, for appellant.

W. Morris Taylor, William K. Meehan, Clayton, for respondent.

AHRENS, Judge.

In this action seeking damages for legal malpractice, the trial court entered judgment on a jury verdict for plaintiff in the amount of $6,834,926. An amended judgment was subsequently entered by the trial court in the remitted amount of $2,424,966. Defendants appeal from the judgment and plaintiff cross-appeals the remitted judgment. We reverse and remand for a new trial, and dismiss the cross-appeal as moot.

We view the evidence adduced at trial in the light most favorable to the verdict. Plaintiff and Kenneth Baldridge were married on June 6, 1975. On January 26, 1976, plaintiff executed a postnuptial agreement, at the behest of her husband, without the advice of independent counsel. The agreement was prepared by Kenneth Baldridge's attorney and signed at the attorney's office. The Baldridges lived together as husband and wife until June, 1986, at which time plaintiff retained defendant Lacks to represent her in an action to dissolve her marriage.

Over the following two years, the Baldridges unsuccessfully attempted to reconcile several times, but eventually decided to dissolve their marriage. At a July 1988 meeting, plaintiff and defendant Lacks discussed the possibility of settling the divorce. Plaintiff testified that Lacks told her that Baldridge was attempting to prove his entire net worth was composed of non-marital assets because it was attributable to the original million dollars he had prior to the marriage. Plaintiff further testified that Lacks advised her to settle because, if Baldridge were successful in doing so, or if the postnuptial agreement was found to be valid, she "could walk away with nothing from the marriage." Lacks spent the remainder of 1988 negotiating a settlement with Kenneth Baldridge's attorneys.

In December, 1988, plaintiff again spoke with Lacks. At the meeting, they decided to file a motion pendente lite (PDL) seeking temporary child support and maintenance. Plaintiff testified that Lacks told her there was a "real strong chance" the postnuptial agreement would be held valid. Lacks also told her that he thought Baldridge would be able to prove that everything was attributable to his original million dollars. Plaintiff testified that Lacks said, "You know, I think they are going to do that, and you're going to walk away with nothing. I am telling you to settle this case." Lacks advised plaintiff that her options were to risk receiving nothing or to settle the case.

The PDL hearing was set for March 10, 1989. On that day, prior to the hearing, plaintiff met with Lacks, who informed her that Baldridge had offered one million dollars and a condominium in Florida to settle the divorce. Plaintiff testified that Lacks told her that Baldridge was going to prove that "everything you own is separate," and that she should "take [the offer] and run."[1]

A dissolution hearing was held on March 10, 1989. An oral settlement agreement was dictated into the record. Plaintiff testified that she understood the property she would receive under the settlement agreement was her share of the marital property and all she would receive from Kenneth Baldridge. Plaintiff also testified that she was aware

---

1. This testimony was sharply disputed by Lacks. Lacks testified that he told plaintiff that it was too early to settle the case, but plaintiff ignored his advice and instructed him to settle. He further testified that he told plaintiff that they stood a good chance of getting the post-nuptial agreement set aside but that he could not quantify her chances of success because he didn't know what a judge might do.

that Kenneth Baldridge might have had as much as fifteen million dollars in property and that she was releasing and waiving all rights to any of that property. Plaintiff further testified that she understood that if her divorce were to proceed to trial, the court could give her substantially more than what she was to receive under the settlement agreement. She acknowledged that she understood what she was to receive was her "total share of the marital property, whatever it might be worth, and whatever it might consist of." The court later signed and entered a decree of dissolution, finding that the settlement agreement was not unconscionable.

After the dissolution of marriage, plaintiff's ex-husband suggested to plaintiff that she had gotten a bad settlement and that she could have recovered more money than she had agreed to accept. Plaintiff brought this legal malpractice action against defendant Lacks and his law partners, seeking damages for their allegedly negligent handling of her divorce.

At trial, plaintiff's expert, attorney Allen Russell, testified that Lacks failed to meet the standard of care in regard to the duty to ensure that the client has facts necessary to make a decision as to whether a settlement proposal is acceptable, fair and equitable. Russell further testified that Lacks did not meet the standard of care concerning the proposed settlement because Lacks failed to engage in discovery, failed to trace assets and did not know the extent of the marital and nonmarital estates. Russell also opined that Lacks was not equipped with the necessary information to advise his client as to the advantages and disadvantages of a proposed settlement.

On the other hand, one of defendants' experts, attorney Jack Cochran, testified that the fact that discovery was not completed at the time the case was settled does not indicate that defendant Lacks failed to meet the requisite standard of care. He concluded that there was nothing Lacks did or failed to do in his representation of plaintiff that was a violation of the standard of care attorneys owe their clients.

Defendants' other expert, attorney Charles Todt, testified that an attorney's paramount duty is to do what the client tells him to do and, therefore, defendant Lacks' discovery was sufficient because plaintiff instructed him to settle the case. Todt stated that it is not unusual for a client to want to settle a case before the attorney thinks it prudent. He further testified that the tracing of assets is not always necessary prior to settlement because the client may indicate how much she is willing to accept. In Todt's opinion, once a client decides to settle, the attorney is obligated to do so, and the attorney has no duty to tell the client whether the settlement is good or bad. Todt opined that Lacks met an attorney's standard of care in handling plaintiff's divorce.

## I.

In their first point, defendants claim the trial court erred in denying their motion for a directed verdict. They argue that plaintiff's malpractice claim is barred by collateral estoppel because she is seeking to relitigate the reasonableness of the settlement, an issue which she previously conceded and which had already been judicially determined. We disagree.

Defendants contend that plaintiff, by entering into a contractual, court-approved settlement of the dissolution action and by giving sworn testimony agreeing to be bound by the settlement, is barred from a collateral attack on the reasonableness of the settlement by means of a malpractice action against Lacks.

In reviewing whether to apply the doctrine of collateral estoppel, a court should consider: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Missouri Insurance Guaranty Association v. Wal–*

*Mart Stores, Inc.,* 811 S.W.2d 28, 32 (Mo. App.1991).

Defendants cite *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498 (Mo.App.1985) and *Ahern v. Turner,* 758 S.W.2d 108 (Mo.App. 1988) for the proposition that plaintiff is collaterally estopped from recanting her previous voluntary acceptance of the settlement by taking a diametrically opposed position in a malpractice suit against her ex-lawyer.

This court addressed a similar argument in *Novack v. Newman,* 709 S.W.2d 116 (Mo. App.1985). In *Novack,* the plaintiff's legal malpractice action arose as a result of an earlier medical malpractice case for which the plaintiff had retained defendant attorneys to represent him. Before the medical malpractice case went to trial, the plaintiff settled with the defendant physicians. The plaintiff subsequently filed a motion to set aside the settlement on the basis that he had settled the case because his attorneys had provided him with misinformation and coerced him into the settlement. The plaintiff's motion was denied after an evidentiary hearing and the denial was affirmed on appeal. *Novack v. Drey,* 668 S.W.2d 259 (Mo. App.1984).

The plaintiff then brought the legal malpractice action, alleging that the defendant attorneys' negligence in handling the medical malpractice action caused him to enter into the settlement. The trial court sustained the defendants' motion for summary judgment on the basis that the collateral estoppel effects of the *Novack v. Drey* decision barred the legal malpractice action.

On appeal from the summary judgment, defendant attorneys argued that the issue of the voluntariness of the plaintiff's settlement was adjudicated adversely to plaintiff when his motion to set aside the settlement was denied, thereby precluding the plaintiff from collaterally attacking that settlement in his legal malpractice action. In support of their position, the defendant attorneys relied heavily on *O'Blennis.*

This court held that in the *Novack v. Drey* case, where the court refused to set aside the settlement as between the plaintiff and the defendant physicians, the question of the attorneys' negligence was not determined. We distinguished *O'Blennis,* in which the plaintiff's innocence, an essential element of his legal malpractice claim, was determined adversely to the plaintiff in the previous action. We found that, in contrast to *O'Blennis,* the prior adjudication did not decide the same issue of fact present in plaintiff's subsequent legal malpractice action. *Novack,* 709 S.W.2d 116, 119 (Mo.App.1985).

In the present case, as in *Novack,* we must ascertain whether plaintiff's prior action determined the same issues of fact which she litigated in her legal malpractice action.

Throughout their argument, defendants mischaracterize plaintiff's malpractice claim as an attempt to attack the reasonableness of the settlement. Plaintiff's claim, however, is that defendants failed to provide competent legal advice to her during the prosecution of her divorce action. She is suing to recover for economic loss allegedly sustained as a result. The issues in the present action are whether defendants were negligent in their representation of plaintiff and whether plaintiff was damaged as a result. Plaintiff claims defendants negligently advised her to enter into the separation agreement without first having fully and adequately assessed the nature and extent of the marital estate. These specific issues were not adjudicated at the settlement hearing in the dissolution proceeding.[2] Therefore, defendants' argument of collateral estoppel does not satisfy the threshold requirement that the issues be identical. Point denied.

## II.

■ Defendants' second point on appeal is closely related to their first point, but is based on public policy grounds. They claim that the trial court erred in denying their motion for a directed verdict because litigants should not be allowed to file malprac-

---

**2.** The dissolution court heard no evidence as to whether plaintiff was acting against Lacks' advice. Defendant Lacks testified that at the time of the settlement on March 10, 1989, he told

plaintiff it was an inappropriate time to settle the case. However, Lacks acknowledged that he made no record that plaintiff was settling against his advice.

tice lawsuits which challenge the adequacy of previous settlements. Defendants argue previous courts have exhibited a strongly held view that actions which question the adequacy of an earlier settlement are inimical to the efficient functioning of the judicial system and that they encourage cavalier disavowal of previously solemnized contracts and sworn testimony.

■ Plaintiff complains that defendants have raised this public policy argument for the first time on appeal and, therefore, we should not entertain it. We choose to address this point on its merits because the public policy argument is tied so closely to defendants' first point on appeal. In addition, "because a public policy issue is involved, appellant's failure to properly preserve and present this issue is not critical." *Hackman v. Dandamudi*, 733 S.W.2d 452, 455 (Mo.App.1986).

Defendants urge us to adopt an approach to legal malpractice which encourages rather than discourages settlement. Their position is that public policy dictates that settlements, once consummated, should not be lightly undone. In addition, they argue that Missouri law encourages the peaceful settlement of disputes. Given this, defendants ask us to follow the lead of the Pennsylvania Supreme Court and "foreclose the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies, because to do otherwise … places an unnecessarily arduous burden on an overly taxed court system." *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 526 Pa. 541, 587 A.2d 1346, 1351 (1991).

We agree that public policy strongly favors the peaceful settlement of disputes and that settled cases should not be readily revisited. Particularly in marriage dissolution cases, the statutes seek "[t]o promote amicable settlement of disputes between the parties to a marriage …" § 452.325.1 RSMo 1986; *Dow v. Dow*, 732 S.W.2d 906, 908 (Mo. banc 1987). Balanced against this consideration, however, is the common law right of a client to maintain an action seeking civil liability for negligence.

Defendants ask this court to adopt the Pennsylvania view as set forth in *Muhammad*. The language in that case, however, goes well beyond the proposition that settled cases should not be readily revisited. In essence, defendants ask us to grant attorneys immunity from civil liability in cases where their clients have settled, absent some affirmative misrepresentation or fraud by the attorney. We do not believe it would serve the interests of justice to do so. Accordingly, we refuse to adopt a "bright line" rule that protects attorneys from liability where a plaintiff has made a submissible case of negligence.

■ For the reasons outlined in the following Point III, plaintiff presented sufficient evidence to support her claim of legal malpractice. Therefore, the trial court did not err in denying defendants' motion for directed verdict. Point denied.

### III.

Defendants' next point on appeal is that the trial court erred in denying their motion for a directed verdict because plaintiff failed to make a submissible case of attorney malpractice. Defendants argue that plaintiff failed to prove that she was induced into accepting the settlement by fraud or negligent misrepresentation and failed to present expert testimony that the settlement was unreasonable under all the prevailing circumstances.

■ Plaintiff argues that defendants failed to preserve this alleged error because it was not raised in their answer, motion for directed verdict, or their motion for new trial. Plaintiff's position is that we are precluded from considering this point because it was not properly presented for appellate review and that defendants have waived any complaint as to the submissibility of her case. We disagree.

In their motion for directed verdict, defendants alleged that plaintiff failed to state a claim upon which relief could be granted, that plaintiff failed to prove her allegations, and that under the law and evidence plaintiff was not entitled to recover. Further, in their motion for judgment notwithstanding

the verdict, defendants asserted that the trial court erred in denying their motion for directed verdict because plaintiff could recover only upon a theory of fraud, which was not pleaded in the amended petition.

Rule 72.01(a) requires that "[a] motion for a directed verdict shall state the specific grounds therefor." Although a motion for a directed verdict must state the basis with some particularity, courts apply a liberal construction to this rule. *Muchisky v. Kornegay,* 741 S.W.2d 43, 46 (Mo.App.1987). In addition, our Supreme Court has held that a submissibility argument is preserved for review if a post-trial motion merely alleges a failure to plead or prove a claim upon which relief could be granted and the erroneous denial of a motion for directed verdict. *Gillenwaters Bldg. Co. v. Lipscomb,* 482 S.W.2d 409, 411 (Mo.1972). We find defendants' motion for directed verdict and motion for judgment notwithstanding the verdict sufficiently addressed the submissibility of plaintiff's case to render the issue preserved for review.

The traditional elements of a legal malpractice cause of action are: (1) an attorney-client relationship existed; (2) the attorney acted negligently or in breach of contract; (3) such acts were the proximate cause of the client's damages; and (4) but for the attorney's conduct the client would have been successful in the prosecution of the underlying claim. *Suelthaus & Kaplan, P.C. v. Byron Oil Indus.,* 847 S.W.2d 873, 876 (Mo.App. 1992).

█ A review of the record shows that plaintiff made a submissible case under *Suelthaus:* (1) defendants admitted in their answer that an attorney-client relationship existed; (2) plaintiff's expert testified that Lacks failed to meet the standard of care with regard to his duty to ensure that plaintiff had sufficient information to decide whether the settlement was fair and acceptable and plaintiff testified that Lacks advised her to accept the proposed settlement; (3) plaintiff's expert opined that Lacks' failure to ascertain the nature and extent of the Baldridges' marital property and proceeding to advise plaintiff to settle her divorce action without such knowledge was the proximate

cause of plaintiff's loss; and (4) plaintiff's expert also opined that plaintiff would have been entitled to fifty-five percent (55%) of the marital estate had the divorce action been tried.

Defendants do not claim that plaintiff failed to make a submissible case under *Suelthaus.* Rather, defendants attack the propriety of using the *Suelthaus* elements in the present case. Defendants argue that this traditional standard for legal malpractice is for claims arising out of fully litigated matters and does not fit a case where the plaintiff challenges advice given in connection with settlement of the prior action. Defendants contend that because litigants settle for reasons apart from the probability of success of their claims, the conventional elements of legal malpractice which require proof that "but for defendant's conduct the plaintiff would have been successful in the prosecution of their underlying claim" are unsuited to cases where the plaintiff has entered into a settlement of the previous action. They contend that a submissible case of legal malpractice where the underlying action was settled must focus on the conduct of the attorney and the reasonableness of the settlement under all the prevailing circumstances.

In particular, defendants assert that a submissible case of legal malpractice challenging an attorney's advice given in connection with a settlement should require the plaintiff to demonstrate that the defendant made a fraudulent or negligent misrepresentation which induced the plaintiff to agree to a settlement that was unreasonable under the circumstances. They argue that requiring fraudulent or negligent misrepresentation would eliminate the lawsuits which are merely second guessing an attorney's judgment, yet would allow actions where the client's consent to the previous settlement, if induced by a false statement, was not fully informed nor voluntary.

Defendants argue that the existing negligence standard is not adequately precise and is therefore subject to abuse. Their rationale for requiring misconduct which rises at least to the level of negligent misrepresentation is that this type of malpractice action is

directed at specific statements made by the attorney concerning the prior settlement. Therefore, defendants contend, the crux of the malpractice action in this type of case should be whether the defendant attorney said anything to the plaintiff which caused her to choose to enter into the complained of settlement.

We do not agree with defendants' position that an attorney should be immune from a malpractice action for giving negligent advice absent a false statement or negligent misrepresentation. An attorney should be, and is, liable for any negligent advice which results in damage to the client. The true crux of such a legal malpractice action is whether the client relied on the attorney's advice and thereby sustained damage.

We do not believe reliance should be an explicit element in plaintiff's case, as it would be in an action for negligent misrepresentation. An explicit reliance element is unnecessary because it is implicitly included in the causation element of the traditional malpractice action. Whether and to what extent the client detrimentally relied on the attorney's advice is a matter for argument.

In addition, defendants posit that in this type of case, evidence of what the plaintiff would have received had the settled case gone to trial is inappropriate speculation. They argue that a submissible case of legal malpractice arising out of the settlement of the previous action must include expert testimony that the settlement was unreasonable in light of all the surrounding circumstances.

■■■ A client must show that, but for the attorney's conduct, the client would have been successful in the prosecution of the underlying claim. *Suelthaus,* 847 S.W.2d at 876. In a similar case in which the client's legal malpractice action arose out of the settlement of the previous action, this court held that "[a] legal malpractice claim requires that the plaintiff plead and prove that the underlying claim would have been successful except for the negligence of the attorney defendant, thereby proving damages and causation." *Bross v. Denny,* 791 S.W.2d 416, 421 (Mo.App.1990). *Bross* did not differentiate between underlying actions which were settled and those which went to trial. In keeping with *Bross,* we find that it was not necessary for plaintiff to include expert testimony that the settlement was unreasonable. To prove damages, it was sufficient for plaintiff to include expert testimony as to what she would have received had the underlying action been tried.

## IV.

■■■ Defendants' fourth point on appeal is that the trial court erred in admitting the testimony of plaintiff's expert because it was beyond the permissible scope of expert testimony, in that he related his own version of the facts to the jury and his testimony as to the nature and extent of plaintiff's damages were improper conclusions of law.

Allen Russell, a licensed attorney, testified on plaintiff's behalf as an expert in Missouri dissolution law. Russell's testimony was extensive, covering an attorney's standard of care and the size of the Baldridges' marital estate at the time of the settlement. In addition, Russell explained how marital property is usually determined and distributed in dissolution cases in Missouri. He then opined that defendants' handling of plaintiff's dissolution case did not meet the applicable standard of care. Finally, Russell gave his opinion regarding what a fair and equitable distribution of the Baldridges' marital property would have been given all the facts and circumstances of the case. Russell testified that, due to Ken Baldridges' marital misconduct, plaintiff would have received 55 percent of the marital property, or $7,349,933.

A legal malpractice claim requires that the plaintiff plead and prove that the underlying claim would have been successful except for the negligence of the attorney defendant, thereby proving damages and causation. *Bross,* 791 S.W.2d at 421. Expert testimony is required in legal malpractice claims except in a "clear and palpable" case. *Id.* The admissibility of expert evidence is left to the trial court's discretion and will be disturbed on appeal only upon a showing of abuse of discretion. *Id.*

Defendants' contention that the trial court erred in allowing Russell to tell the jury his own version of the facts is without merit.

Section 490.065.4, RSMo Cum.Supp.1992 provides: "If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, ..." Our reading of Russell's testimony reveals that he did not tell the jury his own "version" of the facts, but rather told the jury the facts upon which he based his opinions. Further, these facts had already been adduced into evidence.

Defendants' assertion that Russell was allowed to speculate as to what a trial court might have awarded and to testify as to conclusions of law also lacks merit. Our review of Russell's testimony reveals that it was offered as his opinion and not as a conclusion as to what a trial court would award. As in *Bross,* Russell testified about matters with which the jurors were not likely to be conversant, his testimony was helpful to them in determining issues before them, and his testimony was admissible as an exception to the general rule that witnesses may not express their opinions. *Bross,* 791 S.W.2d at 421. The trial court did not abuse its discretion in allowing Russell's testimony. Point denied.

## V.

Defendants' fifth point on appeal is that the trial court erred in giving plaintiff's verdict directing instruction because that instruction was prejudicially erroneous. We agree.

■ Defendants assert the verdict directing instruction authorized a verdict for plaintiff based on an undisputed issue which was not pleaded as a breach of duty; namely, that Lacks "failed to advise plaintiff as to the nature and extent of the marital estate."

Instruction No. 6, the verdict director, read as follows:

> Your verdict must be for the Plaintiff Karen Baldridge, if you believe:

First, either:

> Defendant, David B. Lacks, failed to advise Plaintiff as to the nature and extent of the marital estate, or
>
> Defendant, David B. Lacks, advised Plaintiff to accept the offer of settlement made on March 10, 1989, or
>
> Defendant, David B. Lacks, failed to advise Plaintiff to reject the offer of settlement made on March 10, 1989, and

Second, defendant, David B. Lacks, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, as a direct result of such negligence Plaintiff sustained damage.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of the Defendant's profession.

The amended petition alleged that defendants were negligent in seven separate respects.[3] Plaintiff did not plead that defendants were negligent in failing to advise her as to the nature and extent of the marital estate. Rather, plaintiff pled that defendants advised her to enter into the separation agreement without first having fully and adequately assessed the nature and extent of the marital assets. Plaintiff contends this allegation in her amended petition is sufficient to support all of the hypothecations of negligence found in the verdict directing instruction. Plaintiff further claims that the "natural inference" from failure to undertake discovery is a failure to advise, and the pleadings were deemed amended by implied consent. We disagree.

Plaintiff's expert Russell testified that Lacks breached the duty of an attorney in settlement discussions to ensure that the client is aware of the facts necessary to make a decision as to whether a settlement propos-

**3.** The allegations of negligence can be summarized as follows: Defendants (1) failed to proceed with adequate pre-trial discovery; (2) failed to adequately advise plaintiff as to the legal effect of a post-nuptial agreement; (3) failed to depose Kenneth Baldridge; (4) advised plaintiff to enter into the oral separation agreement without first having fully and adequately assessed the nature and extent of the marital estate; (5) failed to develop, preserve and present evidence of marital misconduct; (6) failed to employ appraisers and accountants to evaluate property; and (7) failed to timely prepare and present motions pendente lite.

al is acceptable, fair and equitable. Russell also opined that Lacks did not meet the standard of care concerning the proposed settlement because he did not know what property was marital and nonmarital, and had not completed necessary discovery. Russell's testimony concerning Lack's failure to meet the requisite standard of care focused on Lack's advising plaintiff to enter into the settlement agreement without first having fully and adequately assessed the nature and extent of the marital estate. This was the identical conduct pleaded by plaintiff as a breach of duty. Neither plaintiff's pleading nor expert testimony asserted that the failure to advise as to the marital estate alone constituted a breach of duty.

Lacks testified that, at the time of the settlement, he had not yet ascertained how much property Ken Baldridge had, nor how much of what he had was marital or separate. Lacks also explained the steps necessary in making an evaluation of the marital estate. Lacks did not dispute that he failed to advise plaintiff as to the nature and extent of the marital estate; rather, he admitted it. Lacks' defense was that he informed plaintiff that they were not ready to settle the case because an evaluation of the marital estate had not been completed, but plaintiff insisted on settling as quickly as possible anyway, against Lacks' advice.

The inclusion of the first disjunctive, "failed to advise Plaintiff as to the nature and extent of the marital estate", allowed the jury to base a finding of negligence solely on an issue which was not in dispute and which was not pleaded as a breach of duty. Therefore, the verdict directing instruction was erroneous. *Fisher v. McIlroy,* 739 S.W.2d 577, 581 (Mo.App.1987). Although the issue of whether Lacks advised plaintiff to accept the offer of settlement was submitted in the second disjunctive item, the use of the disjunctive form of submission erroneously allowed the jury to find for plaintiff solely on the undisputed and unpleaded issue of failure to advise as to the marital estate.

Plaintiff's pleaded theory of her case was based on defendant Lacks having advised her to settle without first having fully and adequately assessed the nature and extent of the marital estate. Thus, the first disjunctive submission was not within the fair implications of the pleadings. *Kraus v. Kraus,* 693 S.W.2d 869, 873 (Mo.App.1985). Nor could the pleadings be deemed to be impliedly amended, since there was a lack of evidence that the failure to advise by itself constituted any breach of duty.

An erroneous jury instruction warrants the reversal of a judgment rendered at trial only when its defects are of such a nature that there is substantial potential for a prejudicial effect. *Lear v. Norfolk and Western Ry. Co.,* 815 S.W.2d 12, 15 (Mo.App.1991). The prejudicial effect of an erroneous instruction must be judicially determined. *Id.;* Rule 70.02(c).

The prejudicial effect of the erroneous verdict directing instruction was apparent from plaintiff's closing argument. Plaintiff's attorney stated:

> "When you read Instruction No. 6, read it carefully. It says your verdict must be for the plaintiff, Karen Baldridge, if you believe any of these first three things. Not 'all', but 'any'. It says, first, that David Lacks failed to advise plaintiff as to the nature and extent of the marital estate. Ladies and gentlemen, there's absolutely no question about that."

Plaintiff's attorney quoted defendant Lacks as admitting that, at the time of the settlement, he did not yet know the extent of the marital estate. He then told the jury: "So on the first one, ladies and gentlemen, I submit to you in the Court's instruction that technically you could stop. You could stop at the first instruction." Plaintiff's attorney insured that the jury would focus primarily on the instruction's erroneous first disjunctive, thereby compounding the verdict director's prejudicial effect.

Defendants also allege the verdict directing instruction is erroneous because it failed to include the elements of negligent misrepresentation and constituted a "roving commission" for failure to require a finding as to reliance or the reasonableness of the settlement. For the reasons set forth in our discussion of Points II and III, we find these arguments to be without merit.

We find the verdict directing instruction to be prejudicially erroneous. The judgment must therefore be reversed and remanded for a new trial.

## VI.

Defendants' final point on appeal is that the trial court erred in admitting the testimony of Ken Baldridge's former attorney, Theodore Schechter. In 1986, Schechter was engaged by Ken Baldridge for the purposes of reviewing two documents—the waiver of marital rights and the post-nuptial agreement. At trial, Schechter was questioned by plaintiff's counsel about the advice and opinions he had rendered to Ken Baldridge concerning the two documents. Over defendants' objection, Schechter testified that he told Ken Baldridge "he'd have great difficulty, in my opinion, to [sic] getting a court to rule the post-nuptial agreement was valid." Defendants argue that Schechter's testimony was irrelevant to prove Lack's negligence in the dissolution case. We agree.

Attorney Schechter's 1986 conversation with his client Ken Baldridge concerning the validity of these documents was confidential and protected by the attorney-client privilege. *State ex rel. Great American Ins. Co. v. Smith,* 574 S.W.2d 379, 383 (Mo. banc 1978). Ken Baldridge waived the attorney-client privilege in this malpractice action, but not in the dissolution case. The advice of attorney Schechter would therefore not have been discoverable in the dissolution proceeding. Accordingly, Schechter's testimony was irrelevant to prove or corroborate evidence of Lack's negligence.

Alternatively, relying on *Browning v. Salem Memorial District Hospital,* 808 S.W.2d 943, 948 (Mo.App.1991), plaintiff contends that admission of Schechter's testimony, even if irrelevant, was harmless error where the facts shown were otherwise fully and properly established. However, Ken Baldridge's prior testimony concerning his conversation with attorney Schechter was over the objection of defendants, which was overruled by the trial court. Although defendants make no complaint on appeal concerning the admission of Baldridge's testimony, we do not believe the record here satisfies the *Browning* requirement that the facts shown were "otherwise fully and properly established." *Id.*

The judgment is reversed and remanded for a new trial. Plaintiff's cross-appeal is dismissed as moot.

GRIMM, P.J., concurs in result.

CARL R. GAERTNER, J., concurs.