Beverly Sue RYAN, Clay County Public Administrator As Conservator for the Estate of Brandon Shane Reece, a Minor, Appellant,

v.

Hamp FORD, et al., Respondent.

No. WD 56937.

Missouri Court of Appeals, Western District.

Feb. 22, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2000.

Application for Transfer Denied May 30, 2000.

John Richard Shank, Jr., Kansas City, for appellant.

James P. Barton, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge PAUL M. SPINDEN and Judge VICTOR C. HOWARD.

LAURA DENVIR STITH, Presiding Judge.

Plaintiff–Appellant, the Estate of Brandon Shane Reece ("Brandon"), sued Brandon's former attorneys at the law firm of Knight, Ford, Wright, Atwill, Parshall & Baker ("Defendants" or "the law firm"). Brandon alleged fraud, breach of fiduciary duty, legal malpractice and a right to a constructive trust based on his former attorneys' alleged negligent representation of Brandon in his prior personal injury and wrongful death suits against the driver of a car which hit the car in which he was riding, seriously injuring him and killing his mother. The law firm moved to dismiss the instant suit, alleging that because the probate and circuit court's approval of a settlement of Brandon's personal injury and tort actions included a finding that the settlement was reasonable, the issue whether they had been negligent in their representation of Brandon in those suits had already been litigated and the doctrines of collateral estoppel and equitable estoppel barred its relitigation here. Brandon appeals.

Because we find that the prior determination that the settlement was reasonable did not determine the issue whether Brandon's attorneys adequately represented him in those suits, or whether they had a conflict of interest in that representation which worked to his prejudice, and because we find the elements of equitable estoppel have not been pleaded, we find the trial court erred in granting defendants' motion to dismiss. Accordingly, we reverse and remand to the circuit court for further proceedings consistent with this opinion.

## I. STATEMENT OF FACTS

On November 27, 1980, the car in which Brandon Shane Reece and his parents, John Robert Reece and Julia Reece, were riding was involved in a serious car accident with a car driven by Gerald Pendleton. The accident caused Brandon severe and permanent injuries and caused the

death of his mother, Julia. In the years that followed, a number of lawsuits were filed, dismissed, and later re-filed on behalf of Brandon, seeking to establish liability and recover damages from Mr. Pendleton, from Brandon's father John Robert Reece, and from various medical care providers, based on claims of wrongful death or personal injury.

Although the exact sequence and timing of the filing and dismissal of these suits is not fully clear from the record, the record does show that Mr. Reece and his son, Brandon (by Mr. Reece as conservator), filed a wrongful death action in Cooper County Circuit Court, No. CV184–129CC, seeking $500,000.00 in damages against Mr. Pendleton. On January 8, 1988, Defendant law firm made an entry of appearance for both plaintiffs.

At the time the wrongful death suit was pending, a personal injury suit, No. CV182–86CC, had also been filed by Brandon in Cooper County, Missouri against his father (John Robert Reece), Mr. Pendleton, and various health care providers. Initially, Mr. Reece did not act as conservator for Brandon in that personal injury suit, as he was a defendant in the suit. Sometime prior to May 20, 1988, however, Mr. Reece and Mr. Pendleton were dismissed as defendants from that personal injury suit. As a result, on May 20, 1988, Mr. Reece was re-appointed conservator for Brandon by the Probate Division of the Cooper County Circuit Court. By October of 1988, Brandon's claims for personal injury against the remaining medical care providers were disposed of by a jury verdict for all but one of the defendants, Bradley Lindsay, who agreed to a settlement.

On December 2, 1988, Mr. Reece also engaged the Knight–Ford law firm to represent him as an individual in connection with claims for personal injuries and the death of his wife Julia Reece. Mr. Reece had originally believed that Mr. Pendleton held liability coverage of only $500,000 per accident through his primary insurer,

State Farm Insurance. However, prior to a June 10, 1991, meeting between Mr. Reece and Mr. Ford, the law firm determined that Mr. Pendleton had possible additional liability coverage of $5,000,-000.00 with Granite State Insurance Company and Highlands Insurance Company. As a result of this finding, it was concluded at the June 10 meeting that it was necessary to file another action for the personal injuries of Brandon, this time against Mr. Pendleton only, claiming damages in addition to the $500,000.00 in damages originally claimed in the Cooper County wrongful death suit, No. CV184–129CC, as the secondary insurers would not pay until State Farm reached its policy limits. In his capacity as guardian and conservator of Brandon, Mr. Reece therefore hired the law firm on a contingent fee basis to represent Brandon in his claims for personal injuries against Mr. Pendleton. The law firm then filed the current personal injury suit on June 26, 1991, in Cooper County Circuit Court, No. CV191–89CC, claiming personal injury damages of $10,000,000.00.

So far as the record before us shows, none of the insurers provided a defense for Mr. Pendleton (the insured) in this personal injury action, or in the pending wrongful death suit. The Probate Division of the Cooper County Circuit Court appointed Mr. Abele conservator-ad-litem for Brandon on March 12, 1993 in order to consider a proposed contract that would limit recovery on the personal injury and wrongful claims to the insurance proceeds pursuant to Section 537.065 RSMo 1986, and also in connection with the pending personal injury and wrongful death cases. On March 16, 1993, Mr. Reece, on his own behalf and as conservator for Brandon, and conservator-ad-litem Douglas Abele agreed to enter into the above contract by which the parties agreed to decrease the damages requested in the personal injury suit from $10,000,000.00 to $5,000,000.00, increase the damages requested in the wrongful death suit from $500,000.00 to $5,000,-000.00, and allocate the wrongful death

damages 90% to Mr. Reece and 10% to Brandon.

On March 17, 1993, by request of the parties, the Cooper County Circuit Court transferred both the personal injury claim and the wrongful death claim to the Saline County Circuit Court. Two days later, Mr. Reece and Mr. Abele signed a new contingency fee agreement with the Knight–Ford firm to represent Brandon, Mr. Reece, and Mr. Abele in these actions. By March 26, 1993, the wrongful death and personal injury actions were consolidated in the Circuit Court of Saline County, and assigned to Judge Ravenhill. The judge held a trial on the merits of the claims, and then entered a judgment in the amount of $5,000,000.00 for the wrongful death claim and $5,000,000.00 for the personal injury claim. Additionally, at trial the plaintiffs requested and the judge ordered that the wrongful death claim be allocated 90% to Mr. Reece and 10% to Brandon Reece.

Within a few days after the judgment, Brandon and Mr. Reece filed a garnishment action against State Farm, Granite and Highlands in Cooper County Probate Court. Ultimately, settlement negotiations ensued between Plaintiffs and Granite and Highlands, who offered a settlement valued at $3,600,000.00 to settle the garnishment action. Mr. Reece and conservator-ad-litem Abele agreed to the amount of the settlement and began to negotiate as to how these funds would be allocated among the parties and their attorneys. They agreed that one-third of the settlement, or $1,200,000.00, would be paid to the Knight–Ford firm immediately for its fees and expenses. Mr. Reece would immediately receive 30% of the remainder of the settlement in cash, or $720,000.00. Seventy percent of the remainder would be allocated to Brandon in a structured settlement which would give him $380,000.00 (just over 15% of the remainder of the settlement) immediately and $6,430.00 per month for life or for 20 years, whichever was longer. These terms were approved by both Judge Askren of the probate court in Cooper County and by Circuit Judge Ravenhill in Saline County.

Five years later, on March 26, 1998, the Estate of Brandon Shane Reece filed a Petition in Saline County against the members of the Knight–Ford law firm, and an associate of the firm. The pleadings alleged that Hamp Ford, a partner at the firm, and Lawrence Ferguson, an associate at the firm, had acted improperly and negligently in their representation of Brandon and Mr. Reece in the suits against Mr. Pendleton and in the subsequent settlements with the insurers. The Petition alleged three counts of breach of fiduciary duty, three counts of legal malpractice, two counts of fraud, and one count requesting establishment of a constructive trust, in that the attorneys had a conflict of interest in representing both Brandon and his father, had misrepresented that they were acting in Brandon's best interests, and had breached their obligations to Brandon by favoring his father and their own interests in negotiating the settlements.

The law firm moved to dismiss Plaintiff's claims on the basis of collateral estoppel and equitable estoppel. Plaintiff requested leave to file an amended Petition but failed either to provide a proposed amended Petition or to indicate the nature of the proposed amendments. After a hearing on November 6, 1998, Judge Ravenhill denied Plaintiff's motion to amend and sustained Defendants' motion to dismiss with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

Collateral estoppel and equitable estoppel are affirmative defenses. Rule 55.08. Sustaining a motion to dismiss based on an affirmative defense requires that the defense be irrefutably established by the pleadings. *Murray v. Fleischaker*, 949 S.W.2d 203, 205 (Mo.App. S.D.1997). Our review of a motion to dismiss assumes "every fact pleaded in the petition to be true." *Honigmann v. C & L Restaurant Corp.*, 962 S.W.2d 458, 459 (Mo.App. E.D. 1998). Moreover, "[a] plaintiff is entitled

to the benefit of every favorable inference which may reasonably be derived from the facts pleaded." *Id.* Although a trial court's evidentiary findings warrant deference from the appellate courts, that deference does not apply where the law has been applied in error. *State ex rel. Igoe v. Bradford,* 611 S.W.2d 343, 350 (Mo.App. W.D.1980). We review determinations of law *de novo.* *Jordan v. Willens,* 937 S.W.2d 291, 293 (Mo.App. W.D.1996).

### III. COLLATERAL ESTOPPEL AND EQUITABLE ESTOPPEL DO NOT APPLY

We first note certain issues that are *not* before us on this appeal. The motion to dismiss was not based on an alleged failure of Plaintiff to adequately state a claim for fraud, malpractice and breach of fiduciary duty to Brandon based on Defendants' alleged conflict of interest and their alleged failure to fulfill their legal and fiduciary obligations to him in their handling of the wrongful death and personal injury actions. We therefore do not address the sufficiency of those allegations.[1] Similarly, the issue is not now before us whether Plaintiffs will be able to prove, or survive summary judgment on, their allegations of conflict of interest, fraud, breach of fiduciary duty, and legal malpractice, or the effect on those claims of the fact that Brandon had an attorney conservator-ad-litem who monitored his interests in the litigation and approved the settlements.

We are solely called upon to decide whether the court below correctly determined that collateral estoppel or equitable estoppel applied to Plaintiff's claims of fraud, breach of fiduciary duty and mal-

practice, and barred Plaintiff from further proceeding against Defendants.[2] We turn first to the issue of the applicability of collateral estoppel.

*A. Collateral Estoppel Does Not Apply.*

The doctrine of collateral estoppel, or issue preclusion, precludes a party from litigating an issue which that party or its privy has previously litigated and lost. It is an affirmative defense, and will be applied only if the party asserting its application shows that: (1) the issue decided in the prior adjudication is identical to the issue as to which collateral estoppel is sought in the present adjudication; (2) the prior adjudication was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior suit. *See, e.g., Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979); *Egan v. Craig,* 967 S.W.2d 120, 124 (Mo.App. E.D.1998); *Barton v. Tidlund,* 809 S.W.2d 74, 76 (Mo. App. E.D.1991).

Here, Defendants admit that Plaintiff sues for fraud, malpractice, and breach of fiduciary duty, and that these claims were not tried in the underlying tort suit. They claim, however, that the key fact issues which underlay each of Plaintiff's claims are whether the judgment in the wrongful death suit was too high and in the personal injury suit too low, whether Mr. Reece was disproportionately favored over Brandon in the settlement and allocation of dam-

---

1. We do note that our Supreme Court held in *Klemme v. Best,* 941 S.W.2d 493 (Mo. banc 1997), that an attorney may be sued by a client for breach of fiduciary duty, resulting in constructive fraud, where it is alleged that the attorney represented more than one client and had a conflict of interest in that representation. *Id.* at 495–96. *See also Moffett Bros. Partnership Estate v. Moffett,* 137 S.W.2d 507, 345 Mo. 741 (1939); *Smith v. Mann, Poger & Wittner, P.C.,* 882 S.W.2d 164 (Mo.App. E.D.

1994) (addressing conflict of interest issues in representing clients and use of a guardian-ad-litem in such situations).

2. Plaintiff also raises the issue whether Brandon should have been permitted to amend his Petition once the court determined that he had failed to state a claim. Because of our resolution of the estoppel issues, we do not reach this question.

ages, and generally whether the settlement was reasonable as to Brandon and whether the attorney's fees awarded to the law firm were too high. It notes that, in approving the settlement and the allocation of damages, both Judges Askren and Ravenhill found the settlement and its allocation reasonable. Brandon was a party to those determinations, represented both by his father as conservator, and by Mr. Abele as conservator-ad-litem, as well as by the law firm. In these circumstances, they argue, the trial court properly held that Brandon's estate was collaterally estopped from relitigating these issues. And, if the settlements were reasonable, then Defendants could not be guilty of negligence, breach of fiduciary duty or fraud toward Brandon, and the trial court properly dismissed his claims.

While Defendant's arguments have appeal, they suffer from a flaw which has caused these and similar arguments to be rejected by prior cases. As these courts have noted in similar situations, the issue before the judges who approved the settlement of the underlying suits was whether the settlement was reasonable. In determining that it was reasonable, these courts proceeded on the assumption that counsel for Plaintiff was adequately representing his interests, and they approved the settlement in light of the facts then revealed in discovery. Here, however, Brandon's estate is alleging that his attorneys made misrepresentations to him and to the conservator-ad-litem, that they had a conflict of interest and were not acting in his best interest but instead in the best interest of his father, and with a view to maximizing their own fees, and that, as a result, the settlement, while reasonable in light of the facts then available to the court, was less than it would have been had Brandon been properly represented and in the absence of the alleged fraud and malpractice.

In a similar situation, *Baldridge v. Lacks*, 883 S.W.2d 947 (Mo.App.1994), found that collateral estoppel did not apply even though plaintiff gave sworn testimony agreeing to be bound by a court-approved settlement, where she later learned of a conflict of interest on the part of her attorney in negotiating the settlement. The court stated that the issue in the malpractice action was not whether the settlement of the underlying suit was reasonable, but whether her attorneys provided her with competent legal advice in advising her whether to agree to the settlement:

> Throughout their argument, *defendants mischaracterize plaintiff's malpractice claim as an attempt to attack the reasonableness of the settlement. Plaintiff's claim, however, is that defendants failed to provide competent legal advice to her during the prosecution of her divorce action. She is suing to recover for economic loss allegedly sustained as a result. The issues in the present action are whether defendants were negligent in their representation of plaintiff and whether plaintiff was damaged as a result.* Plaintiff claims defendants negligently advised her to enter into the separation agreement without first having fully and adequately assessed the nature and extent of the marital estate. These specific issues were not adjudicated at the settlement hearing in the dissolution proceeding. [footnote omitted] Therefore, defendants' argument of collateral estoppel does not satisfy the threshold requirement that the issues be identical.

*Baldridge*, 883 S.W.2d at 951 (emphasis added).[3]

3. Defendants try to distinguish the case at bar from *Baldridge* in that, unlike in the latter case, this case involved a minor, and so the settlement was first submitted for approval to Judge Askren in the Probate Court and, upon his approval, to Circuit Court Judge Ravenhill for approval. The implication is that both judges reviewed this settlement and considered Missouri's public policy to maximize the protection afforded to minors, whereas the settlement in *Baldridge* did not involve a conservatorship and, thus, did not receive the same attention, rendering it a less valid judgment. We do not believe the review by two

The reasoning in *Novack v. Newman*, 709 S.W.2d 116 (Mo.App. E.D.1985), is also instructive. In that case, plaintiff hired defendant attorneys to represent him in a medical malpractice action. Before trial, plaintiff settled with his doctors. Subsequently, plaintiff filed a motion to set aside this settlement because defendants misinformed and coerced plaintiff into settling. The trial court denied the motion to set aside the judgment without making findings of facts or conclusions of law. Plaintiff then sued defendants for legal malpractice, alleging that defendants' negligence caused plaintiff to enter into settlement. Defendants argued that plaintiff was collaterally estopped from so claiming, because in denying the motion to set aside the settlement the court in the underlying action had necessarily determined that plaintiff's attorneys adequately represented him. In rejecting this argument, *Novack* reasoned that:

> In [plaintiff's motion to set aside the settlement,] plaintiff alleged that he signed the settlement as a result of duress and misinformation on the part of his attorneys and testified to that effect at the hearing on his motion to set aside the settlement. This court held that there was no evidence that the *defendant-physicians* "participated in or knew of the alleged duress imposed by Novack's counsel." [Citation omitted].

This court refused to set aside the settlement only as between plaintiff and defendant-physicians. The question of his attorneys' negligence, which allegedly induced plaintiff to settle, was not determined by this court.

> ... Here, the issue of attorneys' coercive conduct, an indispensable element of the present legal malpractice case, was not determined in that prior litigation.

*Id.* at 119.[4]

Even more similar to the instant case is *Cook v. Connolly*, 366 N.W.2d 287 (Minn. 1985). Plaintiff Cook filed suit against her attorney, Connolly, who had represented her 10 years earlier in a products liability case while she was a minor. Cook alleged that in the prior tort action Connelly's failure to plead strict liability caused her to receive an inadequate settlement. The court declined to apply collateral estoppel despite the fact that the court trying the tort action had approved the settlement, on the basis that the court in which the tort action was pending "was evaluating the adequacy of the proposed settlement, *not the adequacy of the minor's legal representation.*" *Cook*, 366 N.W.2d at 290 (emphasis added).[5]

Here, as in *Cook, Novack,* and *Baldridge,* Defendants seem to have miscon-

judges rather than one judge to be significant. In any event, this argument again misses the point that Plaintiff is not attacking these judges' conclusions that the settlement was reasonable, but rather is raising the issue whether he was adequately counseled in reaching the settlement.

4. *Compare Johnson v. Raban*, 702 S.W.2d 134 (Mo.App. E.D.1985) (Client lost post-conviction motion alleging ineffective assistance of counsel and was later collaterally estopped in a subsequent malpractice action where there identical issue of counsel's negligence would have been re-litigated).

5. Defendants attempt to distinguish *Cook* by noting that, while the opinion in *Cook* does not indicate what evidence the trial court considered at the time the minor's settlement was approved, significant evidence was pre-

sented below. The evidence that Defendants outline as being introduced only relates to the underlying automobile accident, not the adequacy of Plaintiff's counsel. This evidence may well be relevant in any trial of the issue of adequacy of representation, and, again, we emphasize, we are not called on to decide whether Plaintiff will be able to prove his allegations against Defendants under his claims of breach of fiduciary duty, fraud and legal malpractice. However, whatever may be the case later, the prior determinations as to the reasonableness of the settlement are not determinative of the issue whether Defendants committed the torts alleged by Plaintiff. *See Rogers v. Bond*, 880 S.W.2d 607, 609 (Mo.App. E.D.1994) ("Collateral estoppel may be applied only to those issues which were necessarily and unambiguously decided").

strued Plaintiff's theories. Defendants assert that Plaintiff is attacking the judgment and settlement arrived at below by claiming that the judgment and the subsequent $3,600,000 settlement were both too low, and that the attorney's fees they received were too high. However, Plaintiff is not attempting to set aside the settlement or judgment. Rather, Plaintiff is content to leave the judgment and settlement in place, and is instead suing her attorneys alleging that, but for their fraudulent and negligent counsel, the portion of the settlement Brandon would have received out of the total settlement agreed to would have been greater, and the amount of the total settlement would have been greater. In other words, Plaintiff does not claim any unreasonableness of the judgment or settlement, only that Brandon was inadequately counseled in reaching the same. Whether Plaintiff is able to prove this allegation is an issue for determination on remand. But, for the reasons stated, we hold that collateral estoppel does not bar Plaintiff's action against Defendants.

### B.  Equitable Estoppel Does Not Apply.

■ Defendants also argued below, and argue in this Court, that principles of equitable estoppel (sometimes called estoppel by conduct or estoppel *en pais* ), bar Plaintiff's assertion of this suit. Like collateral estoppel, equitable estoppel is an affirmative defense. Defendants note that *Owen v. City of Branson*, 305 S.W.2d 492, 497 (Mo.App.1957), held the doctrine applies where a party has accepted the benefits of an earlier judgment. Defendants suggest that where, as here, Brandon has accepted the benefit of the settlement by accepting payments under it, he is equitably estopped from attacking the ·judgment or settlement.

We disagree. First, Defendants' argument is again based on the assertion that Plaintiff is attacking the underlying judgment and settlement. That is not the case. Brandon does indeed accept the benefits of the settlement, and has no intention of trying to have it set aside. He argues simply that the settlement would have been larger and differently apportioned absent Defendants' fraud, breach of fiduciary duty and legal malpractice. He is not required to renounce the benefits of the settlement he did receive in order to make these claims.

■ Second, we note that equitable estoppel requires more than proof of acceptance of benefits. *Bass v. Rounds*, 811 S.W.2d 775 (Mo.App. E.D.1991), held that, in order to invoke the doctrine, a party must show by clear evidence that there was:

> a representation made by the party estopped and relied upon by another party who changes his position to his detriment. *Prouse v. Schmidt*, 156 S.W.2d 919, 921 (Mo.1941). The representation may be manifested by affirmative conduct, either acts or words, or by silence amounting to concealment of material facts. *Id.* These facts must be known to the party estopped, and unknown to the other party. *Id.* The "representation" must be made with the intention that it will be acted upon by the other party, or made under circumstances which imply a reasonable expectation that it will be acted upon. *Id.*

*Id.* at 779. Other courts describe the elements of this theory somewhat more succinctly as: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." *Farmland Industries, Inc. v. Bittner*, 920 S.W.2d 581, 583 (Mo.App. W.D.1996); *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 665 (Mo.1970).

Here, Defendants have failed to allege that Plaintiff made a representation which they relied on to their detriment based on facts known to Plaintiff and not to them

and made with the intent that it would be acted upon. Even if they could claim that they relied on the guardian-ad-litem's acceptance of the settlement and other actions on behalf of Brandon, Brandon is not trying to undo the settlement. He is alleging that Defendants acted inequitably and tortiously in failing to disclose facts and in acting in ways which resulted in a lower settlement than would otherwise have been the case. In other words, he asserts it was Defendants, not Plaintiff, who had the greater knowledge and who allowed Brandon to rely on them to his detriment. Whether or not Plaintiff will be able to prove these allegations we do not know. However, we do hold that Defendants failed to assert the elements of the doctrine of equitable estoppel, and so we must reverse the judgment granted on that ground.

For all of these reasons, the judgment of the trial court dismissing Plaintiff's claims with prejudice is reversed and the case is remanded for further proceedings consistent with this opinion.

Judges PAUL M. SPINDEN and VICTOR C. HOWARD, concur.