Ihor George KUPCHYNSKY, Melissa Twomey Kupchynsky, and FGH Homebuilders, Inc., Appellants,

v.

William V. NARDIELLO and Laree Caramella, Appellees.

No. 05–05–01134–CV.

Court of Appeals of Texas, Dallas.

June 6, 2007.

Rehearing Overruled Sept. 12, 2007.

Cynthia Hollingsworth, Gardere, Wynne, Sewell, L.L.P., Gregory Scott Heath, Gardere & Wynne, Dallas, for Appellant.

Lindy D. Jones, Jones, Allen & Fuquary, L.L.P., Dallas, for Appellee.

Before Justices MOSELEY, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice FRANCIS.

In this case involving the sale of a private residence, appellees William V. Nardiello and Laree Caramella sued appellants FGH Homebuilders, Inc., Ihor George Kupchynsky, and Melissa Twomey Kupchynsky in connection with construction defects in the house. The jury awarded damages in appellees' favor. In four issues, appellants challenge the jury's liability findings. In a fifth issue, FGH complains it was not a party to the sale of the house and therefore cannot be liable under the DTPA. We affirm.

FGH builds homes at the Enclave, a residential development. George Kupchynsky is the vice president of FGH. In May 2002, appellees contracted to purchase the two-and-a-half-year-old Kupchynsky residence at the Enclave for $815,000. The residence featured two tiled balconies-one in the front and the other in the back of the house. According to Nardiello, Kupchynsky told him he was the builder of the home.

Over the next eighteen days, appellees obtained home, foundation, and termite inspections. During the home inspection, Nardiello and the inspector found water on the front balcony tile although it was a sunny day. When the water was dried off, Nardiello said it would "leach right back up into the grout of the tile." In his report, the inspector noted that moisture appeared to seep up between the joints of the tile floor. The inspector recommended appellees contact the builder for comment and noted "[r]epair may be needed." To the side of the report, Nardiello wrote, "Call Builder."

Nardiello contacted Kupchynsky, who told him "that was the design of the balcony per the blueprints" and suggested they meet with Darin Willard, who installed the pans for the balconies and could "tell us how those things were to work." At that meeting, Willard told Nardiello that "[w]hat you're seeing here is the way that the water gets out of the pan." Nardiello asked if there was any other way for the water to get out, and Willard said, "No. It will evaporate back up through the grout, which is a porous material." Willard said "it was designed that way," like a "shower pan." Similarly, Kupchynsky told him that "it was built that way."

Appellees ultimately provided the Kupchynskys with a list of thirteen items to be repaired; the items did not include the balcony drainage. The Kupchynskys agreed to make the repairs, and in exchange, appellees agreed that all contingencies had been satisfied or waived and that the $10,000 earnest money was immediately nonrefundable. Appellees then closed on the sale of the home.

Five months later, in October 2002, the back balcony began to leak in several places; in February 2003, the front balcony began to leak. Appellees had several people inspect the balconies to identify the reason for the leaks. After pulling up several tiles and removing the concrete mud, it appeared the balconies had been leaking "for quite some time." The galvanized metal pans were rusted and had holes. When the buyers contacted the architect for the detailed plans on the balcony, they learned there were none.

Construction experts concluded the home was not built in a good and workmanlike manner. In reports offered as evidence, they found the number and locations of drains were not according to the builder's plans; drainpipes were not installed according to the builder's plans; the plans specified the balconies sloping away from the rear of the house, but the balconies were level; and the pans were made of galvanized metal with a lifetime of three to five years, instead of copper pans, which would last a lifetime. According to the experts, once the water seeped through to the tile grout and filled the pans, the water had no means of escape, rusted the pan joints, and began leaking through the substructure. The experts recommended appellees tear out and rebuild the balconies or potentially face structural damage to the home and mold problems. When appellants refused to pay the costs of the repairs, appellees sued the Kupchynskys and FGH.

Following a three-day trial, the jury found appellants engaged in false, misleading, or deceptive acts or practices that appellees relied on to their detriment and that were a producing cause of damages; the Kupchynskys made a negligent misrepresentation on which appellees justifiably relied; and George Kupchynsky and FGH were the builders of the residence and failed to design or construct the home in a good and workmanlike manner to appellees' injury. The jury failed to find that appellants engaged in unconscionable, knowing, or intentional conduct. The jury awarded $52,695 in damages and also

awarded attorney's fees and court costs. The trial court rendered judgment on the jury's verdict. This appeal ensued.

In their first and second issues, appellants complain the trial court erred in failing to direct a verdict or grant their motion for judgment notwithstanding the verdict on appellees' DTPA and negligent misrepresentation claims.

■ A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).

■ A JNOV is proper when a directed verdict would have been proper. *See* Tex.R. Civ. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991). A motion for JNOV should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery. *Morrell v. Finke,* 184 S.W.3d 257, 290 (Tex.App.-Fort Worth 2005, pet. abated); *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex. App.-Houston [1st Dist.] 1992, writ denied). We review the trial court's determination under a legal sufficiency standard. *County of Dallas v. Wiland,* 124 S.W.3d 390, 401 (Tex.App.-Dallas 2003), *rev'd on other grounds,* 216 S.W.3d 344 (Tex.2007).

■ In a legal sufficiency review, we view the evidence in a light most favorable to the judgment and indulge every reasonable inference to support it, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996).

In their first issue, appellants contend appellees' independent inspections of the house and renegotiation of the sales contract "foreclose the element of reliance" as a matter of law. They argue this case is controlled by this Court's opinion in *Dubow v. Dragon,* 746 S.W.2d 857 (Tex.App.-Dallas 1988, no writ).

In *Dubow,* a couple contracted to purchase a house and had it inspected. The inspection report identified several existing problems and potential problems, including movement in the concrete slab. The buyers then hired a foundation specialist, who found additional problems attributable to differential foundation movement. The buyers also had an architect and a contractor look at certain aspects of the house prior to closing.

After receiving the reports on the condition of the house, the buyers were worried about the foundation and other problems. The buyers obtained estimates that the repairs would cost $4000 and demanded the sellers reduce the purchase price of the house. The sellers ultimately agreed to reduce the price of the house by $17,500, and the parties modified their contract to include the following language:

> After careful inspection of the house, and with professional opinions, [w]e feel that the house will need extensive ongoing maintenance because of the site positioning, foundation and drainage. See attached inspection report. We will take the home as is, WITH ALL CONTINGENCIES REMOVED.

(emphasis in original) *Dubow,* 746 S.W.2d at 859.

After closing and taking possession of the house, the buyers encountered problems with the house and ultimately sued the sellers for failure to disclose the foun-

dation problems and roof leaks. The trial court granted summary judgment in favor of the sellers, and the buyers appealed, arguing a fact issue existed because there was evidence they had confronted the sellers with concerns about the house, and the sellers assured them it was a good house with no problems.

This Court focused on the buyers' reliance upon the experts' opinions and the renegotiation of the contract to reject the buyers' claims. Relying on the language of the contract modification, the court concluded that, as a matter of law, the buyers' careful inspection of the house's condition "constituted a new and independent basis for the purchase which intervened and superseded the [sellers'] alleged wrongful act." *Id.* at 860. The court concluded any alleged statements or failures to disclose by the sellers were not a producing cause of any damages to the buyers. *Id.* As explained previously by this Court, "the crucial fact in *Dubow* was not the buyers' procurement of an independent inspection; it was their express and exclusive reliance on the 'professional opinions' they received to renegotiate the sales contract that resulted in the sale of the house." *Fernandez v. Schultz,* 15 S.W.3d 648, 652 (Tex. App.-Dallas 2000, no pet.).

■ Here, there is no evidence that appellees relied solely on the opinion of the inspector in making their decision to purchase the home. To the contrary, Nardiello followed the inspector's recommendation and questioned Kupchynsky about the moisture that appeared to seep up between the joints of the balcony tile. Kupchynsky, who had represented himself as the builder of the house, told Nardiello that the balconies drained as designed "per the blueprints." Yet, the evidence showed there was no detailed blueprint for the balconies' drainage system, and the only plans that did exist were not followed. Once they pulled up the tile, appellees found that the galvanized metal pan had already begun to corrode, a condition that was not ascertainable until the balcony tiles were removed.

In addition to the above, the contract in this case was never renegotiated in reliance on the inspection as it related to the balcony drainage system. Although the Kupchynskys agreed to repair the thirteen items listed on appellees' repair list in exchange for appellees' agreement that the earnest money would become nonrefundable immediately, this agreement is qualitatively different from that in *Dubow,* where the parties reduced the price of the house substantially and included a provision in the renegotiated contract directed at the foundation. Here, there was no reduction of the price of the house at all and no provision in the contract related to the balconies. Under these circumstances, we conclude that *Dubow* does not, as a matter of law, preclude appellees' recovery on their claims against appellants, and the evidence is not legally insufficient to support the jury's DTPA and negligent misrepresentation findings on that basis.

Alternatively, appellants assert in two sentences that the evidence is factually insufficient to show appellees relied on appellants' representations regarding the balconies. Appellants make no separate argument with respect to this complaint. To the extent they rely on the previous argument, it is without merit. We overrule the first issue.

In their second issue, appellants argue appellees "assumed the risks of repairs to the [h]ome" because the sales contract included an "as is" provision that negates any causation as a matter of law. Here, they rely on *Prudential Insurance Co. of America v. Jefferson Associates, Ltd.,* 896 S.W.2d 156, 161 (Tex.1995).

*Prudential* involved a commercial real estate transaction. The buyer purchased

an office building. The contract he submitted contained the following provisions:

> As a material part of the consideration for the Agreement, Seller and Purchaser agree that Purchaser is taking the Property "AS IS" with any and all latent and patent defects and that there is no warranty by Seller that the Property is fit for a particular purpose. Purchaser acknowledges that it is not relying on any representation, statement or other assertion with respect to the Property condition, but is relying upon its examination of the Property....

*Prudential,* 896 S.W.2d at 160.

Two years later, the buyer learned the building contained asbestos fireproofing and sued the seller. The court concluded that the buyer's agreement to purchase the property "as is" precluded him from proving that the seller's conduct caused him any harm. "By agreeing to purchase something 'as is,'" the court explained, "a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong. The seller gives no assurances, express or implied, concerning the value or condition of the thing sold." *Id.* at 161.

But the court qualified its holding by emphasizing that this type of agreement would not have "this determinative effect in every circumstance." *Id.* at 162. In particular, the court noted that a buyer would not be bound by an agreement to purchase something "as is" that he was induced to make because of a fraudulent representation or concealment of information by the seller. "A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as is', and then disavow the assurance which procured the 'as is' agreement." *Id.*

Finally, the court recognized that "other aspects" of a transaction may make an "as is" agreement unenforceable:

> The nature of the transaction and totality of the circumstances surrounding the agreement must be considered. Where the "as is" clause is an important part of the basis of the bargain, not an incidental or "boiler plate" provision, and is entered into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he is not buying on representations of the seller should be given effect.... We think it too obvious for argument that an "as is" agreement freely negotiated by similarly sophisticated parties as part of the bargain in an arm's-length transaction has a different effect than a provision in a standard form contract which cannot be negotiated and cannot serve as the basis of the parties' bargain.

*Id.*

Here, the provision relied on by appellants is distinctly different from that in *Prudential.* The provision in *Prudential,* as quoted above, was contained in a contract submitted by the buyer and contained specific language that the buyer took the property as is with all latent and patent defects.

■■ In contrast, the provision here is contained in a standard, preprinted One to Four Family Residential Contract (Resale):

**7. PROPERTY CONDITION**

\* \* \*

> D. ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts Property in its present condition; provided Seller at Seller's expense shall complete the following specific repairs and treatments: <u>correct some flag stone work next to front steps of home.</u>

(The underlined portion was handwritten and was included in the contract before any inspections.)

Nardiello testified the provision was neither discussed nor negotiated. Likewise, Kupchynsky testified the clause was never discussed with appellees and was not a part of the original negotiations or renegotiations. Rather, Kupchynsky acknowledged the clause was part of the boilerplate language in the contract. Even if we accept appellants' assertion that the parties were of equal bargaining position, we cannot conclude in light of all circumstances that the clause was an "important basis of the bargain" that negated causation as a matter of law. *See id.*

Moreover, the evidence shows that when appellees asked Kupchynsky about the water on the balcony tile, he replied that the balcony was designed to drain that way according to plans. As previously stated, the evidence showed there were no detailed drainage plans for the balconies, and the balconies varied from the only plans that existed. There is evidence Kupchynsky knew, but did not disclose, that the pans used were galvanized metal, which other evidence showed was prone to corrosion in this application. Kupchynsky's statement about the balcony drainage and nondisclosure of galvanized pans is significant not because he is the owner or seller of the house, but because he was the builder and therefore presumably would have more knowledge, and credibility, than an ordinary seller.

Given the totality of the circumstances and the nature of the transaction, we conclude the as-is clause in this case did not negate causation as a matter of law. In reaching this conclusion, we necessarily disagree with the dissent's analysis. The dissent would reverse this issue by crafting an argument for appellants that they never briefed, argued, or otherwise urged in this appeal or in the trial court. We perceive a fundamental problem with the dissent's suggestion that the buyers/plaintiffs' proof in response to the as-is clause

constituted affirmative defenses for which they needed to plead and request issues. In particular, we question how the buyers/plaintiffs were supposed to know to plead "affirmative defenses" to the as-is clause when the sellers/defendants never pleaded the clause as a defense in the first place.

As in *Prudential,* this case comes to us on a jury verdict in which no issues or instructions were requested by either party with respect to the as-is clause. In our review, we have addressed this issue exactly as it was briefed and argued by all parties. More importantly, we have examined the case exactly as did the court in *Prudential,* as we are bound to do, considering the various factors that the court noted could render such an agreement unenforceable. *See Gym-N-I Playgrounds, Inc. v. Snider,* 220 S.W.3d 905, 912, n. 10 (Tex., 2007).

Appellants alternatively assert that because they have conclusively established appellees assumed the risks associated with the balconies, the evidence is factually insufficient to support the jury's DTPA and negligent misrepresentation findings. They do not make any separate argument. For the reasons previously stated, we reject this contention. We overrule the second issue.

In their third issue, appellants argue there is no evidence to support the jury finding that the Kupchynskys made a negligent misrepresentation. The jury charge defined negligent misrepresentation as follows:

Negligent misrepresentation occurs when—

(a) a party makes a representation in the course of his business or in a transaction in which he has a pecuniary interest,

(b) the representation supplies false information for the guidance of others in their business, and

(c) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.

■ Appellants argue that because appellees bought the home as a personal residence, there is no evidence that the Kupchynskys "made any representation for the guidance of the plaintiffs in their business." Other than a general cite to one case stating the elements of the cause of action and the restatement of torts, appellants make no argument that the cause of action is so limited. Under these circumstances, we conclude this issue is inadequately briefed. *See* Tex.R.App. P. 38.1(h). Additionally, we have previously rejected appellants' challenge to the legal and factual sufficiency of the evidence to sustain the jury's DTPA finding in Question No. 1. Because the judgment can be supported on this theory, we need not address the merits of this claim. *See* Tex. R.App. P. 47.1. We overrule the third issue.

■ In their fourth issue, appellants argue the trial court erred in refusing to disregard the jury's finding in Question No. 5 that George Kupchynsky was one of the builders of the house. Specifically, appellants argue that George was merely the vice president of FGH and FGH was the builder of the house. (Appellants do not challenge the finding in Question No. 5a that George and FGH failed "to design or construct the home in a good and workmanlike manner, to Plaintiff's injury[.]")

The jury was charged that a builder "is one whose occupation is the building or erection of structures, the controlling and directing of construction, or the planning, constructing, remodeling and adapting to particular purposes buildings and other structures."

Nardiello and appellants' own expert, Keith Harvey, both testified that Kupchynsky told them he was the builder of the home. In addition to this evidence, Willard testified that it was his understanding at the time he installed the pans that Kupchynsky was the builder. Mitch Campbell, who was a job supervisor for FGH, testified that Kupchynsky "completed the home" from the time it was framed. He testified that Kupchynsky actually dealt with the subcontractors and did so differently on this house because it was his home. In fact, the architectural plans, dated a year before the Kupchynskys' purchase of the home, stated they were for a residence for "George and Melissa Kupchynsky," not FGH. Finally, Kupchynsky signed documents with the City of Irving stating that he was the superintendent of the construction project.

We conclude a reasonable jury could find, given this evidence, that George Kupchynsky was a builder of the home. With respect to appellants' assertion that there can be only one builder of a home, the only case they referenced, *Wiggins v. Overstreet,* 962 S.W.2d 198 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), does not support their position. To the extent appellants argue the evidence is factually insufficient because they have conclusively shown the contrary, we reject the claim. We overrule the fourth issue.

In the fifth issue, FGH argues the trial court erred in denying its motion for instructed verdict and JNOV on appellees' DTPA claims because FGH was not a party to the transaction. Relying solely on this Court's opinion in *Todd v. Perry Homes,* 156 S.W.3d 919, 922 (Tex.App.-Dallas 2005, no pet.), FGH contends it was not a party to the sale and therefore cannot be held liable.

In *Todd,* subsequent purchasers of a house built by Perry Homes sued the hom-

ebuilder over damages from alleged improper drainage. The trial court granted a no-evidence summary judgment on the Todds' claims for breach of the implied warranty of habitability and unconscionable conduct under the DTPA; other claims, including a breach of the implied warranty of good workmanship, were resolved by jury trial. *Todd,* 156 S.W.3d at 921. The Todds appealed only the granting of the summary judgment.

This Court explained that the implied warranty of habitability extended only to latent defects, and there was no evidence of a latent defect. *Id.* With respect to the unconscionability claim, this Court concluded there was no evidence that Perry Homes was connected to the Todds' purchase of the home, that any representations Perry Homes made reached the Todds, or that Perry Homes benefited from the purchase. Thus, the Court concluded that without evidence of a connection between Perry Homes and sale of the home to the Todds, Perry Homes could not be held liable for unconscionable conduct. *Id.* at 922.

Appellants rely on the Court's analysis of the unconscionable conduct claim. However, this case does not involve unconscionable conduct; rather, the jury found FGH and Kupchynsky breached the implied warranty of good and workmanlike manner. The Texas Supreme Court has held that the implied warranties of habitability and good workmanship are implicit in the contract between the builder/vendor and original purchaser and are automatically assigned to the subsequent purchaser. *Gupta v. Ritter Homes, Inc.,* 646 S.W.2d 168, 169 (Tex.1983).

*Todd* is not instructive, and appellants have made no attempt to distinguish *Gupta* or analyze any of the law that has developed in this area since *Gupta* issued. It is not the duty of this Court to make arguments for either side. Given the argument presented, we conclude appellants have not shown reversible error. We overrule the fifth issue.

We affirm the trial court's judgment.

MOSELEY, J., dissenting.

Concurring and dissenting by Justice MOSELEY.

In this suit arising from the sale of residential real estate, the trial court entered judgment in favor of appellees William V. Nardiello and Laree Caramella ("Buyers") and against appellants Ihor George Kupchynsky and Melissa Twomey Kupchynsky ("Sellers") and George Kupchynsky's employer, appellant FGH Homebuilders, Inc., based in part on the Buyers' DTPA and negligent misrepresentation claims. It did so despite the existence of an "as-is" clause in the parties' sales contract, which if effective, conclusively negates proof of the causation elements inherent in those claims. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161–62 (Tex.1995). The existence of this "as-is" clause is undisputed, and both parties introduced copies of the sales contract into evidence.

The majority opinion affirms the trial court's judgment, based on two of the exceptions to *Prudential's* principal holding mentioned in *Prudential* itself. However, these exceptions were not pleaded by the Buyers, asked of or found by the jury, or proved conclusively so as to obviate the need for submitting them to the jury. Absent findings (or conclusive proof) in favor of the Buyers as to one of the *Prudential* exceptions, or as to some other matter that would vitiate the "as-is" clause, I would reverse the trial court's judgment and render judgment that the Buyers take nothing by way of those claims.[1]

---

1. The trial court also rendered judgment in favor of the Buyers and against George Kup-

As indicated herein, I believe my differences with the majority opinion primarily hinge on the answer to one question: Who has the burdens of pleading and proof with respect to the efficacy of an "as-is" clause? That question is outcome-determinative here, because whoever had those burdens failed to meet them. None of the parties pled the existence of the "as-is" clause or any of the *Prudential* exceptions to the efficacy of that clause. Neither side submitted issues necessarily referable to the "as-is" clause or the *Prudential* exceptions that would render it ineffective to negate causation. Thus, if the Buyers were required to plead and obtain findings as to the existence of one or more of the *Prudential* exceptions, the judgment on their DTPA and negligent misrepresentation claims cannot stand on appeal. However, if the Sellers and FGH were required to specially plead the existence of the "as-is" clause, or if they were required to obtain findings that the "as-is" clause was effective, then they cannot rely on the "as-is" clause to avoid liability on those claims.

## I. BACKGROUND

The Sellers and the Buyers entered into a real estate sales contract[2] that provided the "Buyer accepts the property in its present condition . . . ";[3] the form contract thereafter provided a blank to facilitate the insertion of any exceptions to that clause, which the contracting parties did. The contract also provided the Buyers could terminate the contract within fourteen days and receive a full refund of their $10,000 earnest money deposit; this provision was designed to allow the Buyers to have the house inspected (which they did) and to determine whether they wished to go through with the transaction.

Thereafter the Buyers' inspector noted moisture seeping up from the tile grout on the north bedroom balcony and indicated to the Buyers that repair may be needed. When Nardiello asked Kupchynsky about the balcony, Kupchynsky made the statements described in the majority opinion (and summarized herein); he also set up a meeting between himself, Nardiello, and the subcontractor who built the balconies.

After the inspections and before the end of the fourteen day period, the Buyers and Sellers negotiated further; the Sellers agreed to repair a dozen or so additional items set forth in an addendum to the contract; and in return the Buyers agreed to remove the contingencies to the contract and make the earnest money deposit non-refundable. It is undisputed the additional repair items listed in the addendum did not include any repairs to the balconies. The parties to the contract closed the sale and the Buyers moved in.

Later the Buyers sued the Sellers and FGH for damages resulting from the condition of the house's two balconies. The case was tried to a jury. At the close of the Buyers' case, the trial court granted the Sellers' and FGH's motion for instructed verdict as to all claims except the

---

chynsky and FGH based on breach of the implied warranty of good and workmanlike construction. Because there is evidence that both of those parties were the "builders" of the house, and because the language in the sales contract is not effective to disclaim that warranty, I agree with the majority in affirming that portion of the judgment. Thus, I concur in the court's judgment in part and respectfully dissent in part.

**2.** FGH was never a party to this contract, and was not involved in any negotiations or discussions concerning the sale.

**3.** The language quoted from the form has been construed to constitute an agreement to purchase the property "as-is," *Cherry v. McCall*, 138 S.W.3d 35, 39 (Tex.App.-San Antonio 2004, pet. denied); *Fletcher v. Edwards*, 26 S.W.3d 66, 75 (Tex.App.-Waco 2000, pet. denied). None of the parties here argue for a different construction.

claims for DTPA violations, negligent misrepresentation, and breach of the implied warranty of good and workmanlike construction. Thereafter, the jury found that:

- the Sellers and FGH engaged in false, misleading, or deceptive acts or practices that the Buyers relied on to their detriment and that were the producing cause of the Buyers' damages;
- the Sellers and FGH did not engage in any such conduct knowingly or intentionally;
- the Sellers and FGH did not engage in any unconscionable action or course of action that was a producing cause of the Buyers' damages;
- the Sellers (but not FGH) made negligent misrepresentations on which the Buyers justifiably relied;
- both George Kupchynsky and FGH (but not Melissa Kupchynsky) were builders of the house, and they failed to design or construct the house in a good and workmanlike manner; and
- as a result of the Sellers' and FGH's actions, the Buyers suffered damages of $52,695.[4]

Based on these findings, the trial court entered judgment in favor of the Buyers against the Sellers and FGH, who appeal.

## II. DTPA AND NEGLIGENT MISREPRESENTATION

In their second issue, the Sellers and FHG contend the "as-is" clause in the sales contract negated any of their actions as a cause-in-fact (and thus as a producing cause and proximate cause, respectively) for the Buyers' DTPA and negligent representation damages. On this basis they assert the trial court erred in denying their motion for instructed verdict and their motion for judgment notwithstanding the verdict as to the Buyers' DTPA and negligent misrepresentation claims.

### A. *Prudential*, Causation, and "As–Is" Clauses

A valid "as-is" clause in a sales contract negates the buyer's ability to prove the seller's actions are an "actual [cause] in fact" of the buyer's injury. *See Prudential*, 896 S.W.2d at 161–62; *Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 726 (Tex.App.-Dallas 2006, no pet.) (same); *Bynum v. Prudential Residential Servs., Ltd. P'ship*, 129 S.W.3d 781, 788 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) ("as-is" clause in sale agreement for remodeled home bars claims relating to remodeling work). *Prudential* treats the existence of a valid "as-is" clause—not as an affirmative defense to the buyer's claims—but as a matter of proof conclusively negating an element of those claims. *Prudential*, 896 S.W.2d at 164.[5] By agreeing to purchase the property "as-is," the buyer agrees to make his own assessment of the bargain and accepts the risk that he may be wrong. *See id.* at 161. The seller gives no assurances, express or implied, concerning the value or condition of the thing sold, and the buyer chooses to rely on his own determination of the value and condition of the purchase, thus eliminating the possibility that the seller's conduct will cause him damage. *Id.*[6]

---

4. The jury also found the amount of the Buyers' reasonable and necessary attorneys fees for the trial and the appeal of the case.

5. "[W]e conclude that [the buyer's] agreement to buy the Jefferson Building 'as is', in these circumstances, conclusively shows that nothing Prudential did caused [the buyer] damages." *Id.*

6. Further, causation in fact is essential to recover on either the Buyers' DTPA or their negligent misrepresentation claims:

Proof of causation is essential for recovery on all of [the buyer's] causes of action. Negligence, for example, requires proof of proximate cause. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988). For DTPA violations, only producing cause must be shown. Tex. Bus. & Comm.Code § 17.50(a). The element common to both proximate

As a result, a valid "as-is" agreement "prevents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid because it is *impossible* for the buyer's injury on account of this disparity to have been caused by the seller." *Id.* (emphasis added). As the supreme court summarized at the end of the *Prudential* opinion, "The issue which is dispositive in [the buyer's case is] whether his 'as is' agreement establishes that [the seller] could not have been a producing cause of his harm...." *Id.* at 164. This is the holding in *Prudential.*

## B. The *Prudential* Exceptions

However, the presence of an "as-is" provision is not determinative in every circumstance. *Id.* at 162. *Prudential* itself describes three situations when a buyer will not be bound by an "as-is" clause:[7] (1) when the "as-is" agreement was "induced by fraudulent representation or concealment of information" by the seller; (2) when the buyer has a right to inspect the property sold but that right is "impaired" or "obstructed" by the seller; or (3) when "other aspects of the transaction ... make an 'as is' agreement unenforceable." *Id.*[8]

cause and producing cause is actual causation in fact. *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex.1993). This requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980). Unless there is some evidence that [the seller] caused [the buyer] damages, and this evidence satisfies the requirement of actual causation in fact, [the buyer] is not entitled to recover on any of his claims.
*Prudential*, 896 S.W.2d at 161.

7. *Prudential's* discussion of situations in which an "as-is" clause is ineffective to negate causation is in response to Justice Cornyn's concurring opinion, and not in response to assertions by the buyer that any of these situations existed in that case. Thus, this language constitutes judicial dicta. *See Palestine Contractors Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex.1963) (judicial dictum is "deliberately made for the purpose of being followed by the trial court. It is not simply 'obiter dictum.' It is at least persuasive and should be followed unless found to be erroneous.").

8. For convenience, the relevant text from *Prudential* is quoted in full:
By our holding today we do not suggest that an "as is" agreement can have this determinative effect in every circumstance. A buyer is not bound by an agreement to purchase something "as is" that he is induced to make because of a fraudulent representation or concealment of information by the seller.... A seller cannot have it both ways: he cannot

assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase "as is", and then disavow the assurance which procured the "as is" agreement. Also, a buyer is not bound by an "as is" agreement if he is entitled to inspect the condition of what is being sold but is impaired by the seller's conduct. A seller cannot obstruct an inspection for defects in his property and still insist that the buyer take it "as is". In circumstances such as these an "as is" agreement does not bar recovery against the seller.
We also recognize that other aspects of a transaction may make an "as is" agreement unenforceable. The nature of the transaction and the totality of the circumstances surrounding the agreement must be considered. Where the "as is" clause is an important part of the basis of the bargain, not an incidental or "boiler-plate" provision, and is entered into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he is not relying on representations by the seller should be given effect. Justice Cornyn's concurring opinion argues that such factors are generally not important, and that "as is" agreements must be given the same effect in every transaction absent fraud or adhesion. We simply disagree. We think it too obvious for argument that an "as is" agreement freely negotiated by similarly sophisticated parties as part of the bargain in an arm's-length transaction has a different effect than a provision in a standard form contract which cannot be negotiated and cannot serve as the basis of the parties' bargain.
*Prudential*, 896 S.W.2d at 162 (citations omitted).

(This exception will be discussed in more detail herein.)

The majority opinion rejects the Sellers' and FGH's argument that the "as-is" clause negates the causation elements inherent in the Buyers' DTPA and negligent misrepresentation claims. It does so based on the first and third exceptions set forth in *Prudential.* However, I disagree with the premise that either exception is available procedurally to support the Buyers' position or the trial court's judgment.

### 1. Nature of the Exceptions—Affirmative Defenses

A party must affirmatively plead certain matters, including duress, estoppel, illegality, waiver, and "any other matter constituting an avoidance or affirmative defense." Tex.R. Civ. P. 94. Without parsing the *Prudential* exceptions with respect to how they fit into one or more of the specific matters listed in Rule 94, it cannot be disputed that they constitute "matter[s] of avoidance or affirmative defense." If proved, they would render the "as-is" clause unenforceable and thus ineffective to preclude the Buyers from proving that the actions of the Sellers and of FGH were a cause-in-fact of the Buyers' damages.

The burden of pleading and proving the elements of an affirmative defense is on the party seeking to rely on that defense. *See Compass Bank v. MFP Fin. Servs., Inc.,* 152 S.W.3d 844, 851 (Tex.App.-Dallas 2005, pet denied). If not pleaded or tried by consent, an affirmative defense is waived. *See id.* (non-jury trial). Further, on an appeal from a jury trial, "all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex.R. Civ. P. 279.

Here the Buyers failed to plead any grounds—specified by *Prudential* or otherwise—for disregarding the "as-is" clause. They also failed to request (and the trial court failed to submit to the jury) any element of any such matter in avoidance of the "as-is" clause. Therefore, unless an affirmative defense to the "as-is" clause was conclusively established by the evidence, it was waived. *See* Tex.R. Civ. P. 94, 279.

To conclusively prove an affirmative defense to the "as-is" clause, the Buyers had to "so conclusively proved each element of [that] affirmative defense ... that there was no fact question to submit to the jury on any of its elements." *See Brown v. Zimmerman,* 160 S.W.3d 695, 702 (Tex. App.-Dallas 2005, no pet.). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Talford v. Columbia Med. Ctr. at Lancaster Subsidiary, L.P.,* 198 S.W.3d 462, 464 (Tex.App.-Dallas 2006, no pet.) (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982)).

In concluding that the "as-is" clause does not negate causation with respect to the Buyers' DTPA and negligent misrepresentation claims, the majority opinion references evidence relevant to two of the *Prudential* exceptions—the fraudulent inducement exception and the generally phrased "other aspects of the transaction" exception. However, neither of these exceptions was conclusively proved by the evidence.

### 2. First Exception—Fraudulent Inducement

As the majority opinion correctly notes, a buyer is not bound to an "as-is" purchase agreement that was induced by the seller's fraudulent representation or concealment of information. Quoting from *Prudential,* 896 S.W.2d at 162, the majority opinion states: "A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agree-

ment to purchase 'as is', and then disavow the assurance which procured the 'as is' agreement."

As support for this exception, the majority opinion references evidence that George Kupchynsky, when asked about the water on the balcony tile, responded that the balcony was designed to drain that way according to the plans; it then contrasts this statement with evidence that no detailed plans for the balconies existed and the balconies varied from the only plans that did exist. It also notes Kupchynsky did not disclose that the pans under the balconies were made of galvanized metal, and not more expensive (but longer lasting) copper. The majority opinion then concludes: "Kupchynsky's statement about the balcony drainage and non-disclosure of galvanized pans is significant not because he is the owner or seller of the house, but because he was the builder and therefore presumably would have more knowledge, and credibility, than an ordinary seller."

This analysis is similar to that utilized to review the sufficiency of the evidence supporting a jury finding. However, whether the evidence would *support* a finding that the Sellers and FGH fraudulently induced the Buyers into agreeing to the "as-is" clause is markedly different from whether the evidence so *"conclusively established"* the fraud affirmative defense so as to obviate even submitting the question to the jury. *See* Tex.R. Civ. P. 279 (emphasis added).

Without recounting the evidence in detail, it is clear reasonable minds could have

differed as to whether the Sellers and FGH induced the Buyers to agree to the "as-is" clause through fraud. It was also undisputed that FGH was not a party to the sales contract and had no role in its negotiation. Additionally, the trial court granted the Sellers' and FGH's motion for instructed verdict on, among other things, the Buyers' fraud claims. And the jury specifically found the Sellers' misrepresentations were *negligent,* not intentional, and the Sellers' and FGH's violations of the DTPA were not knowing or intentional. Lastly, although there is evidence Kupchynsky knew the pans were made of galvanized metal, there is no evidence the Buyers asked him what material was used to construct the pans or that he answered falsely in response. In the face of these circumstances, there is no basis for concluding that the Buyers "so conclusively proved each element of [their fraud] affirmative defense ... that there was no fact question to submit to the jury on any of its elements." *Brown,* 160 S.W.3d at 702.

In fact, the majority opinion does not expressly hold that the Buyers conclusively proved the Sellers and FGH obtained their consent to the "as-is" clause through fraud. Absent such an express conclusion, the majority opinion's analysis appears to expand *Prudential's* exceptions to vitiate an "as-is" clause based on the seller's *negligent or unintentional misrepresentation. Prudential* expressly rejects this concept. *See Prudential,* 896 S.W.2d at 162 ("Nor is a seller liable for failing to disclose what he only should have known.") (citing *Ozuna v. Delaney Realty, Inc.,* 600 S.W.2d 780, 782 (Tex.1980) (per curiam)).[9]

9. Further, expanding the *Prudential* exceptions to include negligent misrepresentation would allow courts and juries to reform a sales transaction and re-allocate the parties' risks based on what they think the parties *should have known,* rendering the efficacy of an "as-is" clause a matter of conjecture. This runs contra to the supreme court's recent opinion in *Gym–N–I Playgrounds, Inc. v. Snider,* 220 S.W.3d 905 (Tex., 2007), in which the supreme court again affirmed the parties' freedom to contract and allocate the risks of a transaction by entering into "as-is" agreements, stating "Texas strongly favors parties' freedom of contract." *Id.*

### 3. Third Exception—"Other Aspects" of the Transaction

*Prudential* also stated an "as-is" clause may be unenforceable based on "other aspects of the transaction...." *Prudential,* 896 S.W.2d at 162. In describing this third exception, *Prudential* explains that the "nature of the transaction and the totality of the circumstances surrounding the agreement must be considered." It then illustrates the parameters of this situation through a negative example, stating the exception is inapplicable "[w]here the 'as is' clause is an important part of the basis of the bargain, not an incidental or 'boiler-plate' provision, and is entered into by parties of relatively equal bargaining position...." *Id.*

In discussing this exception, the majority opinion notes evidence in the record that the "as-is" clause was "boilerplate" in a pre-printed form contract and that it was not discussed or negotiated. It then concludes: "Even if we accept appellants' assertion that the parties were of equal bargaining position, we cannot conclude in light of all circumstances that the clause was an 'important basis of the bargain' that negated causation as a matter of law." I have two problems with this analysis.

First, the majority opinion's analysis appears to reverse the burden of proving an exception to the efficacy of the parties' "as-is" contract term. As an affirmative defense, the burden of proving such an exception is on its proponents—the Buyers—not the Sellers or FGH. *See Compass Bank,* 152 S.W.3d at 851; *Prudential,* 896 S.W.2d at 162–63 ("Goldman [the buyer] makes essentially three arguments for

avoiding his 'as is' agreement.... None of Goldman's arguments avail to avoid the 'as is' agreement.").[10]

Second, the majority opinion's analysis again resembles a review of the evidence supporting a jury finding establishing the affirmative defense. As discussed with respect to the first *Prudential* exception, the proper standard of review is whether "ordinary minds could not differ as to the conclusion to be drawn from the evidence," *see Talford,* 198 S.W.3d at 464, and thus whether the Buyers "so conclusively proved each element of [this] affirmative defense ... that there was no fact question to submit to the jury on any of its elements." *See Brown,* 160 S.W.3d at 702.

Utilizing the *Talford* and *Brown* standard of review, and in addition to the evidence pointed out previously and in the majority opinion, there is evidence that:

- the Sellers and the Buyer used a standard form contract approved by Texas Real Estate Commission;[11]

- FGH was not a party to the sales transaction;

- the sentence containing the "as-is" clause went on to state: "provided Seller, at Seller's expense, shall complete the following specific repairs and treatments ...";

- thereafter, the form contained a blank line in which the following text had been hand-written by one of the parties: *"correct some flag stone work next to front steps of home"*;

- most of the negotiations and communications about the transaction took

---

10. *Cf.,* however, *Prudential,* 896 S.W.2d at 167 (Cornyn, J., concurring), which in dicta implies that the burden of disproving the third ("other aspects of the transaction") exception would be on the seller, though recognizing that the issue would be a fact question for the jury. ("When the seller can establish

to the jury's satisfaction that the clause was actually negotiated in an arms-length transaction, the seller may indeed prevail....") *Id.*

11. Texas Real Estate Commission Form TREC 20–5.

place between George Kupchynsky and one of the Buyers (Nardiello);

- Nardiello had purchased and sold five or six other homes and was a partner in several residential town home developments in Euless;
- Nardiello knew when he signed the sales contract that the transaction was on an "as-is" basis (subject to the repair of the flag stones); and
- Nardiello and George Kupchynsky later negotiated for the Sellers' repair of the additional items set forth in the addendum, in return for the Buyers' removal of the contingencies to the contract, making the earnest money deposit non-refundable.

And again, the jury found that any violations of the DTPA were not knowing or intentional, that the Sellers and FGH did not engage in any unconscionable action or course of action, and that any misrepresentations were made negligently.

In the face of these circumstances, there is again no basis for concluding the Buyers "so conclusively proved each element of [their] affirmative defense ... that there was no fact question to submit to the jury on any of its elements." *Brown*, 160 S.W.3d at 702.

### 4. The Majority Opinion

The majority opinion characterizes the above affirmative-defense analysis as "crafting an argument for [the Sellers and FGH] that they never briefed, argued, or otherwise urged in this appeal or in the trial court." I disagree. The Sellers and FGH argue here—as they did below—that the "as-is" clause negated the causation element of the Buyers' causes of action as a matter of law.[12] If their argument is sound, then the majority opinion's criticism amounts to a complaint that the Sellers

and FGH did not point out (or undertake themselves) the Buyers' burden of pleading, proving, and obtaining findings as to any grounds for avoiding the "as-is" clause. In contrast, it is the Buyers who assert on appeal—without benefit of pleading or answers to jury issues—that one or more of the *Prudential* exceptions avoids the effect of the "as-is" clause. And it is the Buyers and the majority opinion—again without benefit of jury findings—who rely on some evidence in the record to conclude the Buyers are not bound by the "as-is" clause. However, absent an affirmative finding on a basis for avoiding the "as-is" clause, some evidence is not enough—there must be conclusive evidence. *See Brown*, 160 S.W.3d at 702. Thus the above analysis merely points out why the Buyers' reply to the Sellers' and FGH's argument is unavailing.

The majority opinion also asks "how the buyers/plaintiffs were supposed to know to plead 'affirmative defenses' to the as-is clause when the sellers/defendants never pleaded the clause in the first place as a defense." As noted earlier, *Prudential* treats the existence of an "as-is" clause as a matter negating proof of an element of the plaintiff's claims, not as a defense or affirmative defense. *See Prudential*, 896 S.W.2d at 164. Thus, Rule 94 does not compel the Sellers and FGH to affirmatively plead the "as-is" clause as a prerequisite for arguing that the undisputed evidence of the "as-is" clause—introduced by both sides to the dispute—negates as a matter of law the causation elements of the Buyers' claims. Moreover, the Buyers—like any other civil litigants—are bound by the terms of Rule 94, and thus may be presumed to be aware that they must plead any of the matters listed therein, or

---

12. This argument was the basis for the Sellers' and FGH's motion for summary judgment (which was not ruled on by the trial court), their motion for instructed verdict, and their motion for judgment notwithstanding the verdict.

"any other matter constituting an avoidance or affirmative defense . . . ," in order to avoid the "as-is" language in their contract. *See* Tex.R. Civ. P. 94.

### 5. Conclusion

Because the Buyers did not obtain a finding on any affirmative defenses to the enforceability of the "as-is" clause, and because they did not prove any such affirmative defense as a matter of law, they waived any affirmative defenses to the "as-is" clause in the parties' sales contract. *See* Tex.R. Civ. P. 94, 279. Thus any such affirmative defenses are not available to the Buyers to avoid the efficacy of the contract's "as-is" clause. I would conclude this clause negates the Buyers' assertions that the Sellers' or FGH's actions were a cause-in-fact of the Buyers' DTPA and negligent misrepresentation damages.

### III. WARRANTY OF GOOD AND WORKMANLIKE CONSTRUCTION

In their fourth issue, George Kupchynsky and FGH also contend the trial court erred in entering judgment on the jury's finding that they were both builders and that they breached an implied warranty that the house was constructed in a good and workmanlike manner. In support of this contention, they argue that, as a matter of law, George Kupchynsky was not a "builder" and thus could not have violated the implied warranty.

I agree with the majority that a builder impliedly warrants that a building constructed for residential use is constructed in a good and workmanlike manner and that this implied warranty extends to subsequent purchasers with respect to latent defects not discoverable by a reasonably prudent inspection of the building at the time of sale. *See Gupta v. Ritter Homes, Inc.,* 646 S.W.2d 168, 169 (Tex.1983). I also agree that: (1) based on the evidence presented, a reasonable jury could have found that George Kupchynsky was a builder of the home; and (2) the case referenced in support of the George Kupchynsky's contention that there can only be one "builder" of a home, *Wiggins v. Overstreet,* 962 S.W.2d 198 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), does not support that argument. Thus, I join with the majority in overruling appellants' fourth issue.

### IV. CONCLUSION

Based on the above analysis, I would sustain the Sellers' and FGH's second issue, reverse that portion of the trial court's judgment based on the Buyers' DTPA and negligent misrepresentation causes of action, and render judgment that the Buyers take nothing from Sellers or FGH by way of those claims. As a result, I would not address appellants' first, third and fifth issues. *See* Tex.R.App. P. 47.1.[13]

Additionally, I would affirm the trial court's judgment in favor of the Buyers

---

**13.** In their first issue, appellants assert the trial court erred in entering judgment on the Buyers' DTPA and negligent misrepresentation claims because the evidence conclusively proved that the Buyers relied on their own inspections of the house and thus any representations of the Sellers were not a cause-in-fact of the Buyers' damages. In their third issue, appellants assert there is no evidence the Kupchynskys made an actionable negligent misrepresentation because such a representation (according to the jury charge) must supply "false information for the guidance of others in their business," and it is undisputed that the transaction at issue here involved the Buyers' purchase of a home for their personal residence and did not involve the Buyers' business. In their fifth issue, appellants assert the trial court erred in denying their motion for instructed verdict as to the Buyers' DTPA claims against FGH because it was undisputed that FGH was not a party to the transaction.

and against George Kupchynsky and FGH based on their breach of the implied warranty that the house was constructed in a good and workmanlike manner. Thus, I concur in part and respectfully dissent in part from the majority opinion.