# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00350-CV

**Appellant, Evans P. Weaver//Cross-Appellants, Jim Tobin and Linda Tobin**

**v.**

**Appellees, Jim Tobin and Linda Tobin//Cross-Appellees, Evans P. Weaver;
Weaver Interests, Inc.**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. GN301325, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Fraud is a fact question that is uniquely within the province of the trier of fact to resolve after weighing the evidence, including the nature of the transaction between the parties, the totality of the circumstances, and the credibility of the witnesses. The majority sets aside a jury's unanimous fraud finding, substitutes its own factual determination that there was no evidence to support the jury's finding, and renders a take-nothing judgment. Because I conclude the evidence was legally and factually sufficient to support the jury's fraud finding, I would affirm the trial court's judgment. Accordingly, I respectfully dissent.

A jury in 2004 returned a unanimous verdict on all submitted theories of recovery in favor of appellees Jim and Linda Tobin against appellant Evans P. Weaver and Weaver Interests, Inc. The lawsuit arose from two contracts between the Tobins and Weaver Interests that provided for Weaver Interests to design and construct improvements on residential property, including

the design and construction of an auto park driveway area on a cost-plus basis.[1]  As to the fraud

claim against Mr. Weaver, who was the owner and president of Weaver Interests, the Tobins

---

[1]  The letter agreement from Mr. Weaver on behalf of Weaver Interests, Inc., to the Tobins set out the parties' initial agreement to begin construction immediately on a cost-plus basis:

> Thank you for your compliments on my work and your interest in my company providing Design Planning and Construction Services at Falcon Ledge.
>
> I am excited about this Project and look forward to working with you to make the Residence "your dream."  I assure you; I am capable of such a task!
>
> In an effort to move forward swiftly and in advance of a formal written Construction Agreement; I propose we enter into this letter Agreement to commence Phase One of the Project; as follows:
>
> 1-Site clean up and haul off.
> 2-Survey of boundary.
> 3-Remove all trash and debris.
> 4-Commence driveway court turn around area.
>
> I will start this work immediately. I will bill you against an initial Construction Draw of Fifty Thousand Dollars ($50,000.00) on a cost plus 15% basis. My labor crew(s) charges/fees will be billed 17% for labor administration.

The parties also entered into a "Design and Planning Agreement" that provided for the design of all phases of the contemplated project for a fee of $50,000:

a.  Master plan entire site,
b.  Design interior and exterior renovations for the existing Residence,
c.  Design courtyards, walls, water features, exterior fireplaces and all site features, upon the site,
d.  Design all additional gazebos, buildings, wine cellar(s), studios and/or additional buildings to be placed upon the Property,
e.  Master plan and re-design entry and auto court,
f.  Design and Master plan interior of Residence.

2

contended that he fraudulently induced them to enter into the contracts by misrepresenting anticipated construction costs.

The jury awarded actual damages to the Tobins in the amount of $245,957.23 in three separate damages findings that were conditioned on three separate affirmative liability findings: (i) against Weaver Interests for DTPA violations, (ii) against Weaver Interests for breach of contract, and (iii) against Mr. Weaver for fraud. After the Tobins filed an election of remedies to recover actual damages on their fraud claim against Mr. Weaver and to recover attorney's fees against Weaver Interests pursuant to their DTPA claims, the district court entered judgment awarding actual damages against Mr. Weaver but no amount against Weaver Interests.

On appeal, Mr. Weaver contends that the evidence was legally and factually insufficient to support the jury's fraud finding. Because Mr. Weaver did not object to the jury charge, we assess the sufficiency of the evidence in light of the jury charge the district court actually submitted. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). The district court's submitted fraud question included instructions defining fraud, misrepresentation, and superior knowledge:

> Did Evans Weaver commit fraud against the Tobins?
>
> "Fraud" occurs when:
>
> a.      a party makes a material misrepresentation,
>
> b.      the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

3

c.      the misrepresentation is made with the intention that it should be acted on by the other party, and

d.      the other party acts in reliance on the misrepresentation and thereby suffers injury.

"Misrepresentation" means:

a.      a false statement of fact; or

b.      a promise of future performance made with an intent, at the time the promise was made, not to perform as promised; or

c.      an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.

"Special Knowledge" means knowledge or information superior to that possessed by the other party and to which the other party does not have equal access.

Given the nature of the transaction, between an experienced builder and his customers, and the totality of the circumstances, I would conclude that there was ample evidence to support the jury's affirmative fraud finding under the submitted instructions. *See Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161-62 (Tex. 1995) (buyer not bound by an agreement to purchase something "as is" if induced to make because of fraudulent representation; nature of transaction and totality of circumstances considered in this determination); *Kupchynsky v. Nardiello*, 230 S.W.3d 685, 689-91 (Tex. App.—Dallas 2007, pet. filed) (same).

The evidence supports a jury finding that Mr. Weaver had "special knowledge" as an experienced builder, and that he, "claiming or implying to have special knowledge" of the cost and time to complete the auto park driveway area as contemplated by the parties, made material misrepresentations to the Tobins. Mr. Tobin testified that he and his wife talked to Mr. Weaver

4

about three separate projects, "the auto park driveway area, the shop area, and then the remodeling," and that they told Mr. Weaver that they were hoping to spend "roughly $300,000" for everything. He testified that Mr. Weaver told them "he was an experienced builder," "what you want to do is very doable," and that "we can make the changes quickly and cheaply." As to the auto park driveway area, Mr. Tobin testified that he and his wife discussed the budget of $60,000 with Mr. Weaver, and Weaver told them $60,000 was "just way too much" for the auto park driveway area and that he could do it for "cheap, cheap, cheap" and within thirty days.

The evidence supports a jury finding that Mr. Weaver knew his misrepresentations as to the auto park driveway area to be false. There was evidence that Mr. Weaver made the misrepresentations after reviewing the scope of the proposed project with the Tobins and after inspecting the property. Mr. Weaver testified that he had performed similar projects within the last few years and that he knew costs: "I have been doing this for 33 years and I know how much rock it takes and I know how much steel it takes and I know how much concrete it takes." In contrast to Mr. Weaver's representations that $60,000 was "too much" and that he could do it for "cheap," the Tobins were invoiced over $100,000 within a short time frame and ultimately paid over $300,000 without the auto park driveway area being completed. Alternatively, based on the definition of fraud in the charge, the jury could have credited the evidence that the construction and design of the auto park driveway area was complicated and that costs were uncertain to conclude that Mr. Weaver made misrepresentations "recklessly without any knowledge of the truth and as a positive assertion." The experts agreed that the auto park driveway area was complicated, but Mr. Weaver made positive

5

assertions as to the cost and time to complete the area and then recommended immediately commencing construction without final plans.[2]

The evidence supports a jury finding that Mr. Weaver made misrepresentations with the intent that the Tobins act on them. Weaver Interests's balance sheet, that was admitted as an exhibit, showed a negative net worth of approximately $500,000 and that Weaver Interests owed Mr. Weaver personally over $2.1 million. Statements of Weaver Interests's checking accounts, also admitted as exhibits, showed that the accounts had negative balances at times during the relevant time period and that the balance in one of the accounts was under $100 around the time the parties entered into the contracts. From this evidence, the jury could have inferred that Mr. Weaver and Weaver Interests were in need of immediate cash and that Mr. Weaver intentionally misled the Tobins to induce them to agree to the contracts and to allow immediate construction and cash payments to begin. *See Walters v. American States Ins. Co.*, 654 S.W.2d 423, 426 (Tex. 1983) (jury entitled to make inferences if they are reasonable and based on the facts proved).

The evidence also supports a jury finding that the Tobins relied on Mr. Weaver's misrepresentations and suffered injury. Both Mr. and Mrs. Tobin testified that they relied on

---

[2] As to why construction began immediately without plans, Mr. Tobin testified on cross-examination:

Q.    Did you request that [Mr.] Weaver begin immediately without any working plans?

A.    [Mr. Weaver] actually recommended that as a course of action because it was difficult to see from the hillside what was underneath the dirt and brush to figure out what kind of structure would need to be built. I agreed because it made sense to figure out what was down there first.

Mr. Weaver's expertise and that they would not have entered into the contracts without Mr. Weaver's representations concerning cost to complete.[3] They also testified that they paid over $300,000, and there was expert testimony that the auto park driveway area as constructed by Weaver Interests was neither completed nor functional for its intended purposes.

---

[3] During redirect examination, Mr. Tobin testified that he would not have entered into the agreement without the representation that the cost would be less than $60,000:

Q.    Did you discuss the budget of $60,000 for the auto park?

A.    Yes, Mr. Weaver said that estimate was too high.

Q.    Was that the basis of you entering into the cost-plus contract?

A.    Yes, we never would have built the driveway for a third of a million dollars.

Mrs. Tobin testified similarly during direct examination:

Q,    Did [Mr. Weaver] ever quote you a budget to build the auto park?

A.    He had made the statement when we had talked about a friend of ours who had spent 60,000 on [a] driveway that that would be too much.

Q.    Was that figure ever put in any kind of written estimate?

A.    No, it was not, but we kind of took it as kind of [a] ballpark idea as to where this would go.

Q.    Would you have entered into any contracts with Mr. Weaver regarding construction of the auto park had you known that the budget would eventually exceed five times its original—

A.    Absolutely not.

Q.    Did you rely on his representation?

A.    Yes, we did.

7

The majority holds that the evidence was legally insufficient to support the fraud finding because "there was no evidence that Weaver made a false representation of material fact." Without addressing the fraud question and instructions submitted to the jury, the majority limits its analysis to Mr. Weaver's representation that the cost to construct the auto park driveway area "would not exceed approximately $60,000." The majority concludes that the Tobins failed to establish that "they described and Weaver understood the specific product to be constructed and that the product could not be built for approximately $60,000." The majority's analysis ignores the proper standard of review.

We are to assess the legal and factual sufficiency of the evidence under the charge as submitted. *See Wal-Mart Stores, Inc.*, 52 S.W.3d at 715. Based on the charge as submitted, the jury could have credited the evidence that Mr. Weaver made misrepresentations after discussing the scope of the proposed project with the Tobins and after inspecting the home site, that he was an experienced builder that knew costs, and that he had done similar projects.[4] Based on this evidence and the fraud question and instructions submitted to the jury, the jury could have determined that Weaver, as a builder "with knowledge or information superior to that possessed by [the Tobins] and to which [the Tobins did] not have equal access," expressed false opinions "with knowledge of

_____

[4] Mr. Tobin testified that the Tobins discussed the auto park driveway area with Mr. Weaver at the home site and that they told him what they wanted—"to fix the driveway situation, because it's a long, narrow driveway without a circular drive at the bottom . . . [to] make it more maneuverable to move cars in and out and have an extra place for a car." There was also testimony that the home site was located on the side of a hill, that Mr. Weaver inspected the home site before making representations as to cost, and that he was "able to quote a budget of $60,000" because Mr. Weaver said that "he was experienced. He built like this all the time. He had built on hillsides and, you know, sounded like he knew what he was doing."

8

[their] falsity." Alternatively, the jury could have credited the evidence that the cost to construct the auto park driveway area was uncertain to conclude that Mr. Weaver expressed false opinions as to the cost to construct "recklessly without any knowledge of the truth and as a positive assertion."

The question whether Mr. Weaver committed fraud against the Tobins was ideally suited for the jury and was given to them by the judge. The jury answered this question in favor of the Tobins. Because the evidence was legally and factually sufficient to support the jury's fraud finding, I would affirm the district court's judgment against Weaver for actual damages.[5]

As to the issue the Tobins raise on appeal, I agree with the majority's conclusion that the Tobins are not entitled to attorney's fees against Weaver Interests because the Tobins elected to recover their damages pursuant to the jury's fraud finding. I would therefore affirm the judgment in all respects.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed: July 18, 2008

_____

[5] In reversing the judgment, the majority should remand this case to the district court instead of rendering. Reversing the fraud finding should not preclude the Tobins from pursuing recovery under the alternative theories that the jury found in the Tobins' favor, including recovering actual damages and attorney's fees pursuant to the DTPA against Weaver Interests. *See Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (when jury returns favorable findings on alternative theories, prevailing party may seek recovery under an alternative theory if the judgment based on one theory is reversed on appeal).

9